**TRADERS & GENERAL INS. CO. v. RHONE et al.**

No. 3159.

Court of Civil Appeals of Texas. Beaumont.

Oct. 21, 1937.

Rehearing Denied Dec. 3, 1937.

Barnes & Barnes, of Beaumont, and Lightfoot, Robertson, Saunders & Gano, of Ft. Worth, for appellant.

Calhoun & Marcus and Lamar Cecil, all of Beaumont, and Touchstone, Wight, Gormley & Price, of Dallas, for appellees.

COMBS, Justice.

This is a compensation case. Appellee Upshur Rhone is the injured employee. He received a compensable injury while working as a steel worker. It is not questioned that he is entitled to compensation for his injury. The controlling question is whose employee was he at the time he was injured. A correct determination of that question will determine the issue as to which of the two compensation insurance companies involved owe him the money.

The material facts, as we view them, are free from conflict. On October 12, 1935, Rhone was employed as a steel worker in the erection of a steel frame residence in Beaumont, Tex. The house was being erected by Beaumont Development Corporation as the general contractor. The appellant, Traders & General Insurance Company, was the compensation insurance carrier for said general contractor. Several subcontractors were engaged on the job, including C. H. McDaniel, who had the subcontract for the erection of the steel frame for the building. The appellee Casualty Underwriters was the compensation carrier for McDaniel. Upshur Rhone had worked for McDaniel as a steel worker for a number of years. Mr. J. P. McCarter was general foreman on the job representing the general contractor. In a general way McCarter had charge of all of the work to see that it was done according to specifications. It was also his duty to co-ordinate the work of the various subcontractors engaged on the building. In other words, if a subcontractor desired some work to be done which was not in line with his own contract, he made his request known, not to the subcontractor who had the particular work in charge, but to McCarter. It also appears without dispute that prior to the injury to Rhone McDaniel made an agreement with McCarter for McCarter to direct his (McDaniel's) employees also. McCarter kept his own time, and he apportioned it between the general contractor and McDaniel in accordance with the number of hours which he put in for each. On the day Upshur Rhone was injured he came to work on the job for McDaniel. During the morning the

plumbing contractor notified McCarter that it would be necessary to move the location of one of the steel joists which had already been put in place on the second floor by McDaniel, it being necessary to change the location of the joist in order that the plumbing might be brought into the building. It was shown that the joist in question had been installed by McDaniel in accordance with the approved plans and specifications, and that the only reason it was necessary for it to be moved was to accommodate the plumbing contractor, so that the plumbing "stack" could be erected and brought into the building at a different location from that shown on the drawing according to which McDaniel had performed his work. However, the steel work on the building had not been finished, and McDaniel and his employees, including Rhone, were engaged in work on the steel framework on another part of the building. When notified by the plumbing contractor that it was necessary to have the location of the beam changed, McCarter directed Rhone to change the location of the joist, and Rhone proceeded to climb a ladder to the location of the joist and make the change as directed, the entire operation requiring not exceeding ten minutes. In making the change of the joist Rhone used the same tools that he was engaged in using at the time McCarter directed him to change the joist. As he started down the ladder after changing the location of the joist, he fell, severely injuring his left arm. The jury found, and it is abundantly supported by the evidence, that he has lost permanently the use of the left arm. Notice of the injury was given to both insurance companies, and both refused to acknowledge liability, each contending that Rhone was the employee of the other's employer at the moment of the injury, and this suit followed. The plaintiff sued both insurance companies and alleged that when injured he was in the course of his employment with C. H. McDaniel, but, if mistaken in that allegation, that he was under the control and supervision of the Beaumont Development Corporation and was employed as its servant and employee when injured. He prayed judgment against both defendants, or against whichever one was shown to be liable to him. The case was submitted to a jury upon special issues. Certain issues sent to the jury the question of whether Rhone was the employee of McDaniel or the employee of the Beaumont Development Corporation. In response to them the jury found that Rhone was the employee of the Beaumont Development Corporation, and upon the verdict of the jury the trial court entered judgment in favor of Rhone against the Traders & General Insurance Company, compensation carrier for the Beaumont Development Corporation, and adjudged that he take nothing against Casualty Underwriters, the compensation carrier for C. H. McDaniel. The Traders & General Insurance Company perfected its appeal to this court, and Upshur Rhone perfected a cross-appeal against Casualty Underwriters. The contention of the appellee Casualty Underwriters, in support of the trial court's judgment, is based upon the contention that at the moment of injury Rhone had been loaned by McDaniel to the Beaumont Development Corporation; that, since McDaniel had already installed the joist in question in accordance with the plans, it was not his business to move it, that McCarter, in ordering Rhone to make the change of the joist, acted for the general contractor. Tending to support that view, it was shown that McDaniel and McCarter had had a previous understanding to the effect that McCarter might borrow McDaniel's employees whenever he saw fit to perform the work for the general contractor. It was shown in that connection that a day or two before the injury Upshur Rhone had done about two hours' work cleaning up around the premises under McCarter's direction, for which he was paid by the Beaumont Development Corporation. The appellant, on the other hand, contends that the steel work was McDaniel's work, and, since it appears without dispute that McCarter had the right to direct McDaniel's employees for McDaniel, it conclusively appears that Upshur Rhone had not been loaned to the general contractor but was the employee of McDaniel.

Although McDaniel testified that in his opinion Rhone was employed by the general contractor at the time of the injury, he further testified as follows:

"Q. Was there or not any understanding or agreement if you did any additional work not covered in that contract you would get paid for it?

"A. Well, I had a contract to do a certain amount of work for a certain sum and I certainly would not do any more than that for that sum.

"Q. In other words, if you did additional work, you would expect to make an additional charge for it, is that right?

"A. Yes, sir.

"Q. And if you put those steel joists in out there, Mr. McDaniel, according to plans and specifications, and you did put them in I believe you said?

"A. Yes.

"Q. And you had to go in there and change them, after you put them there like you were supposed to, would you or not have made a charge for that additional work?

"A. I would have been entitled to additional compensation.

"Q. Now, this steel joist you learned about Upshur Rhone taking out, was that in your contract?

"A. Yes, sir.

"Q. Was it in your contract to take out that steel joist that he took out?

"A. No, sir.

"Q. Tell the jury, Mr. McDaniel, did you make any charge to the Beaumont Development Association for his time in taking out that steel joist?

"A. No, sir.

"Q. Turn around there and tell the jury why you didn't make any charge to the Beaumont Development Corporation for that five or ten minutes it took to take out that steel joist?

"A. In the first place, it was rather a minimum, inconsequential job to be done and I didn't think it amounted to sufficient dollars and cents to even try to make a charge. If it amounted to any great length of time, of course, I would have asked for additional time."

## Opinion.

The legal proposition invoked by the appellee Casualty Underwriters was stated in Maryland Casualty Co. v. Donnelly (Tex. Civ.App.) 50 S.W.2d 388, 390: "Where one person lends his servant to another for a particular employment and such servant becomes subject to the direction and control of the person to whom he is lent, for anything done in that particular employment he must be dealt with as a servant of the person to whom he is lent, although he remains the general servant of the person who lent him."

It is our view that the facts so relied upon were not sufficient to change the status of Rhone's employment. First, it is true that McCarter, the general foreman, was directing Rhone's work at the time of his injury.

But that fact is not controlling for the reason that it appears without dispute that McCarter also had authority to represent McDaniel, the subcontractor, and to direct McDaniel's employees for McDaniel. In fact, it was shown without dispute that on the day in question McCarter charged up two hours of his time as foreman to the general contractor and four hours to McDaniel. He testified that, in apportioning the time, he charged the two hours' time during the morning, and during which Rhone was injured, to the general contractor, and the afternoon time to McDaniel. But we do not think the manner in which he apportioned his time is of any consequence. It cannot be questioned that he had at all times authority from McDaniel to direct McDaniel's employees in the performance of their duties whenever he had occasion to do so. So then the mere fact that McCarter was directing Rhone's work at the time he was injured is not of itself decisive of the question. Second, true, it is shown without dispute that McDaniel had installed the joist in accordance with the plans and specifications of his contract. But it is also without dispute that the steel framework on the building was McDaniel's contract. It is equally without dispute that he had not completed his steel work. Therefore, it appears that whether the removal of the joist for the contract price was within McDaniel's contract or not was of no consequence except in adjusting payments between McDaniel and the general contractor. If McDaniel had installed the joist in accordance with his contract, then, under the undisputed evidence, he would have been entitled to extra pay for any work performed in changing the location of it. We think it conclusively appears from the evidence as a whole that the final responsibility for completing the installation of the steel framework of the building was at all times McDaniel's. The employee, Rhone, was engaged as the employee of McDaniel in connection with the installation of the steel frame. The work he was performing at the time he was injured was no different from the work of his regular employment with McDaniel. He was using the same tools and doing the same type of work after he was ordered by McCarter to change the location of the joist, as he was doing before.

Suppose then that, instead of changing the location of a beam, requiring but a few minutes, considerable changes in the

framework had been decided upon, necessitating several days of extra work. Can it be doubted that McDaniel would have had the right to perform it and reap the profits? We think not. His contract covered all the steel framework, not a part of it. That simple fact is decisive of this case. For in changing the location of the beam Rhone was still engaged in McDaniel's work, and it was identically the same character of work he was engaged in for McDaniel before McCarter ordered him to make the change. So he was not merely in the employment of McDaniel, but was engaged in the usual course of the business of his employer. Wells v. Lumbermen's Reciprocal Ass'n (Tex.Com.App.) 6 S.W.2d 346.

From which it follows that it is our view that there was no evidence whatever to support the jury's finding that Upshur Rhone was the employee of the general contractor and not the employee of McDaniel. The trial court erred in awarding judgment against the Traders & General Insurance Company. The judgment should have been against the Casualty Underwriters, the compensation carrier for McDaniel. The judgment of the trial court will be reformed so as to award judgment against said Casualty Underwriters and will be reversed and rendered as to Traders & General Insurance Company.

### On Rehearing.

In its motion for rehearing, the appellee Casualty Underwriters insist we were in error in our holding that the foreman, McCarter, had power and authority to direct McDaniel's employees for McDaniel. We were not in error. Mr. McDaniel testified:

"Q. Who was your foreman? A. I handled the job myself.

"Q. I know, but you couldn't be there all of the time? A. * * * Until I found it necessary, on the account of some other work toward the last end of the job and then I asked Mr. McCarter to finish up the work."

The evidence as a whole leaves no doubt that at the time Upshur Rhone was injured Mr. McDaniel had already made the arrangement with McCarter to "finish up the work." For instance, on the day that Upshur Rhone was injured, McCarter charged the greater part of his time to McDaniel. Yet, McDaniel's testimony discloses that he himself was on the job until around 5 o'clock of that day. In other words, McCarter was directing McDaniel's employees for McDaniel in the performance of the steel work whenever it was necessary, even when McDaniel was present.

■ In its motion for rehearing appellee seeks to make assignments on the ground of alleged conflicts in the jury's findings, and on the matter of extent of disability, etc. Appellee is in no position to complain of the alleged errors. The assignments which it seeks to invoke were urged by the appellant, Traders & General Insurance Company. The appellee Casualty Underwriters not only did not make any such assignments in its brief, but conceded that there was no merit in said propositions. We quote from its brief as follows:

"The propositions urged by Traders and General Insurance Company in addition to those to which we have replied all urged contentions against Upshur Rhone and seek to reverse the judgment which he obtained against Traders and General Insurance Company on other errors in the case such as alleged conflicts in the jury's findings, on disability, etc.

"While it appears to us after reading the brief of the appellant, Upshur Rhone, that there is no merit in any of the propositions urged by Traders and General Insurance Company, yet we deem it improper in this brief in behalf of Casualty Underwriters to enter into the controversy which is wholly between Upshur Rhone and the Traders and General Insurance Company and shall urge no reply to any of the points involved in the case except those affecting the liability of Casualty Underwriters."

Moreover, appellee did not even pray in the alternative for a remand of the case. Its prayer was: "We respectfully pray that the judgment of the trial court be in all things affirmed and in the alternative that it be affirmed in all respects with reference to the appellee, Casualty Underwriters."

Having contested only the proposition of liability as between it and Traders & General Insurance Company, it is confined to that issue.

The motion for rehearing is overruled.