## MAGNOLIA PETROLEUM CO. v. FRANCIS.

### No. 4100.

Court of Civil Appeals of Texas. Beaumont.

Feb. 2, 1943.

Rehearing Denied Feb. 17, 1943.

Lipscomb & Lipscomb, of Beaumont, for appellant.

Gaston Wilder, of Beaumont, for appellee.

O'QUINN, Justice.

On or about the 17th of April, 1941, appellee, Roy Francis, as an employee of E. L. Stewart was assisting in unloading the cargo of the ship Yankee Arrow. Stewart, as contractor, was unloading this ship for appellant, Magnolia Petroleum Company, under a written contract from which we quote the following provisions:

"This Agreement made the 16th day of April, 1941, by and between E. L. Stewart hereinafter called 'Contractor,' and Magnolia Petroleum Company, a Texas corporation, hereinafter called 'Company':

"Contractor hereby agrees to furnish the labor, equipment, implements, teams, trucks and all things necessary for and to do and perform the work and services hereinafter set out as an independent contractor, free of control or supervision of Company as to means and method of performing the same; that all persons engaged in the performance of said work or service shall be solely the servants or employees of Contractor; that Contractor shall carry Employers' Liability or Workmen's Compensation insurance covering all persons performing such work or

service, and carry Public Liability insurance covering the classes of work done and all motor equipment used hereunder, all in amounts and under policies examined, approved and accepted by Company. * * *

"Work to be performed:
"Unload Car #A. T. & S. F. 137255 of Line for Water Treating Plant . $ 18.00
"Unload Cargo S/V Yankee Arrow 180.00
"Clean No. 1110 Tank 62.00
"Bond (not) required $————
"Witness the signatures of the parties hereto the day and year first above written.

"E. L. Stewart
———————————
Contractor

"MAGNOLIA PETROLEUM COMPANY
———————————
Company

"By C. A. Knight"
———————————.

Appellee as an employee of Stewart was injured on the 17th of April, 1941, while helping unload this ship, and brought this suit against appellant for the damages suffered by him, on allegations that his injuries were proximately caused by the negligence of appellant's servants, who were also assisting the contractor in unloading the ship. Judgment was for appellee for damages on the verdict of the jury, from which appellant has regularly prosecuted its appeal.

We sustain the proposition that, as a matter of law, appellee's injuries proximately resulted from the negligence of the contractor's servants and employees, who were not at the time appellant's servants and employees, nor its joint servants with the contractor.

Appellee was injured while on the deck of the ship by a crane or winch which was being operated by a "rigging crew" in the general employment of appellant. This crew had been in appellant's employment for a long time and continued in its employment after appellee was injured; in fact appellant paid the crew for the services rendered by it which proximately caused appellee's injuries.

The following testimony of the contractor, which is in no way contradicted by any other evidence, explains why the general employees of appellant were assisting in unloading the ship:

"Q. Now, Mr. Stewart, your agreement in connection with that, with that work out there, you complete the job and furnish the men and equipment to do that work? A. Yes, sir.

"Q. Do you know why the Magnolia Petroleum Company had men working on that rigger gang in connection with that work? A. Yes, sir. We had taken over —"* * *

"Q. You say, 'Yes.' I now ask you why. A. Because we had just taken over dry cargo discharging, and I did not have a trained crew to put on the winch either a flagman at that time. The Magnolia men were experienced, had been doing that work before, but it was necessary to use them in the yard on account of more rigging work coming up than the rest of them could handle. My men had not been broken in on the job. Now we are using my men all the way through, winches and all.

"Q. In the emergency to get that ship out to sea again? A. That is right.

"Q. The Magnolia Petroleum Company supplied the engine man and catmen? A. I believe they did that on three boats until I broke in a crew."

The contract between Stewart and appellant made him an independent contractor "free of control or supervision" by appellant, "as to means and method of performing" the work of unloading the ship. The contract further provided "that all persons engaged in the performance of said work or service shall be solely the servants or employees of Contractor."

The controlling issue presented by appellant's proposition is whether appellant and Stewart created a novation in the contract by appellant lending to its contractor certain of its general employees for the purpose of performing a specific part of the work covered by the contract. The contractor was compelled to have a "rigging crew." The field of employment was open to him to find such a crew. He took a crew from appellant ready at hand and used it "in the performance" of his contract, which was in writing as stated above, and expressly provided that all persons engaged in the performance of the work should be the servants of the contractor. It is immaterial that appellant paid these servants for the time they worked for the contractor. Conner v. Angelina County Lumber Co., Tex.Civ.App., 146 S.W.2d 1093; and authorities therein cited. Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97; by this court, Traders &

288

General Ins. Co. v. Rhone, 110 S.W.2d 621. It deducted nothing from the contract price for this service. There is nothing in the record to suggest that appellant through any of its administrative officers exercised any authority or gave any instruction to its general servants while they were working for the contractor.

It is true that the foreman of the rigging crew directed the work of his crew in the same manner as if he had been performing a service for appellant, but in doing this he acted as the servant of the contractor and not as an employee of appellant. He did nothing except what was required of him in the orderly discharge of his duties as foreman of the rigging crew. On the undisputed evidence appellant simply loaned its general employees to its contractor. The authorities are clear on the proposition that the servant, though in the general employment of one master, may be temporarily loaned to another. Judge Combs, speaking for this court in Steele v. Wells, 134 S.W.2d 377, 378, said that this principle "is too universally accepted and too well recognized by the Texas Courts to require elaborate discussion."

■ It follows that the court erred in overruling appellant's motion for an instructed verdict.

We pretermit a discussion of appellant's other propositions that the court erred in refusing its motion for an instructed verdict, and also its propositions of reversible error.

Reversed and rendered.