**PRODUCERS CHEMICAL COMPANY**

v.

**T. H. McKAY et al.**

**No. A–8573.**

Supreme Court of Texas.

Feb. 20, 1963.

Rehearing Denied April 17, 1963.

———◆———

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for petitioner.

Merchant, Fitzjarrald, Poole & Merchant, J. Hadley Edgar, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for respondents.

CALVERT, Chief Justice.

In their separate suits for damages for personal injuries, consolidated for trial, T. H. McKay and T. U. Adkins recovered judgments, based upon a jury verdict and following required remittiturs, of $34,786.-66 and $21,011.70, respectively. The Court of Civil Appeals affirmed. 348 S.W.2d 91. We affirm the judgment of the Court of Civil Appeals.

McKay and Adkins were members of a drilling crew employed by Canadian River Drilling Company in drilling an oil and gas well. Their injuries resulted from an explosion which occurred at the site of the drilling project.

In the drilling operation Canadian River was utilizing a small compressor belonging to Well Completions of Denver, Colorado, in attempting to unload the hole. The small compressor proved inadequate to perform the needed service. H. F. Sears, who is president of Canadian River and was super-

vising the drilling operation, telephoned Producers and requested it to send its compressor for use. Producers responded by sending an Ingersoll-Rand compressor which had been furnished to Canadian River for use on several other occasions. The compressor was very old. Producers also sent McDonald, as operator of the compressor, and two helpers.

McDonald and his helpers placed the Ingersoll-Rand compressor in line between Well Completions' small compressor and the line leading to the metal stand pipe on the drilling rig floor and hooked it up to Canadian Rivers' mud line. Well Completions' compressor fed air to Producers' compressor at a maximum pressure of 120 pounds. After Producers' compressor was started and stopped twice because it was not registering any pressure, McDonald, after working on it and adding oils to various areas, including the Manzell oiler, started it a third time. This time it built up a steady pressure until it reached approximately 1,000 pounds. After thirty or forty minutes of continuous operation, the explosion occurred.

Producers' compressor ran for some ten or fifteen minutes the first time it was started, and for approximately thirty minutes the second time it was started. The compressor had a sufficient amount of oil when it was put in use, but after the second shut down McDonald discovered that about a pint of oil had escaped from the Manzell oiler and he replaced the oil. McDonald testified that the oil had gone up through the pistons and into the outlet line; that it had no place else to go.

. An expert witness testified that in his opinion the explosion was caused by combining a hydrocarbon—oil—with air which was raised to a high temperature by compression. Producers' president, a graduate geologist from Texas Christian University, testified that when air compressed to a high temperature is combined with a hydrocarbon, such as oil, there should be an explosion of some type. He testified that he had the same knowledge on the day the

compressor was furnished for use. However, there is no evidence that Producers' president knew that the compressor was to be used in an air drilling operation on the occasion in question. The operator, McDonald, did know it was to be used in that type of operation before it was installed and put into service.

Producers' first four points of error attack the judgment against it on the ground that the jury's answers to Special Issue No. 3, on which its liability must rest, have no support in the evidence. In these points and in the argument thereunder, Producers urges, in various ways, that there is no evidence that it was under a duty to Canadian Rivers' employees or that it breached a duty to them; that it supplied for use the very compressor requested by Sears; that the pumping of oil by the compressor was an inherent defect which was not a defect at all unless and until the compressor was used for pumping air. Producers objected to the court's charge to the jury because it did not submit issues on duty and breach of duty; and sought submission of issues inquiring whether Canadian River requested and Producers supplied the very compressor used and whether Producers used the compressor for the purpose and in the manner directed by Canadian River.

We have found it difficult to associate the arguments presented in the briefs of the parties with the pleaded theories of recovery and defense and with the special issues submitted to the jury.

Evidence adduced on the trial indicates three possible theories for imposing liability on Producers, viz.: 1. Supplying a defective chattel (compressor) for use by another (Canadian River). This theory, as related to the evidence in this case, is found in and governed by the rules laid down in § 388, Vol. 2, Restatement of the Law of Torts. 2. Supplying a defective chattel (compressor), directly or through a third person, to be used for the supplier's (Producers') own business purposes. This theory is found in and governed by the

rules laid down in § 392, Vol. 2, Restatement of the Law of Torts. In comment *a*, under § 392, it is said that the rules of the section apply to "the tools and appliances which an employer furnishes to his servants to be used in performing the work which they are employed to do." When, as here, a third person suffers injury as a result of the use by employees of a defective chattel supplied by the employer, the theory of § 392 can as well be stated as the using by the supplier, through its own employees, of a defective chattel for its own business purposes. 3. Negligence of its employees in the manner in which they operated the chattel (compressor) supplied for its own business purposes. This theory is simply the well known doctrine of respondeat superior. In saying that the three *possible* theories of liability *are indicated,* we are not to be understood as saying that all of them find legal support in the evidence.

█ The plaintiffs' pleadings seem to predicate liability of Producers on the second and third theories noted above. They alleged that Producers, acting through its agents, servants and employees, was negligent "in using an air compressor that was pumping oil," and then alleged several specific negligent acts or omissions in the manner of operating the compressor. The theory of using a defective chattel was not submitted to the jury and must be held to have been abandoned. Special issue inquiries with respect to three specific acts or omissions on the part of Producers' employees, with related issues of negligence and proximate cause, were submitted to the jury. Only Special Issue No. 3 was answered unfavorably to Producers. In answer to that issue the jury found that E. S. McDonald or one of the employees of Producers "permitted its compressor to pump oil into its outlet line at the time and place in question," and that such act or omission was negligence and a proximate cause of the explosion. The issue, quite clearly, inquires only as to an act or omission in the operation of the compressor.

In spite of the fact that negligence in the manner of operating the compressor is the only theory on which liability could be imposed because that was the only theory of liability submitted to the jury, Producers' attack on the judgment on the ground that the jury's answers to the Special Issue No. 3 have no support in the evidence is based entirely and altogether on the absence of evidence to show a duty or breach of duty by Producers in supplying a defective compressor for Canadian Rivers' use or for use by its own employees. Moreover, plaintiffs meet the charge of lack of evidence to support the verdict by referring alone to evidence which bears on the question of supplying a defective compressor for use in the work to be done.

 Negligent supplying of defective machinery and negligent operation of the machinery are separate and distinct legal concepts, requiring altogether different pleadings, proofs and findings. The Court of Civil Appeals' affirmance of the trial court's judgment is based on its holding that there is in the record evidence of probative force, factually sufficient, to support liability of Producers on the legal theory of supplying a defective compressor to do the work contemplated. Abstractly stated, that is a sound theory for imposing liability, Roosth & Genecov v. White, 152 Tex. 619, 262 S.W.2d 99, but, for the reasons above stated, it cannot be used as a basis for imposing liability in this case.

██ Inasmuch as affirmance of the trial court's judgment by the Court of Civil Appeals is based entirely on the supplying of a defective compressor, it is understandable that Producers' principal argument in this Court under its "no evidence" points of error should be devoted to disputing that theory of liability; but in the absence of proper points of error or argument thereunder in this Court, we are not authorized to consider and decide whether the finding of negligent operation of the compressor has support in the evidence. We hold, therefore, that there is no point of error before this Court asserting the absence of evidence to support the only jury finding that can be the basis for the trial court's judgment of liability.

██ The form of Special Issue No. 3 was hardly a clear submission of negligent operation under the evidence adduced, but no objection to it has been preserved. The real negligence, if any, lay in the continued operation of the compressor after discovery that it was pumping oil. However, we regard the form of the issue sufficient, in the absence of objection, to submit the theory of negligence in the operation of the compressor. The issue can be interpreted to inquire whether Producers' employees *failed to prevent* the escape of oil at the time and place and under the circumstances in question. East Texas Oil Refining Co. v. Mabee Consolidated Corp., Tex.Civ.App., 103 S.W. 2d 795, 797, writ dismissed. The jury's answer to the issue can thus be interpreted to mean that Producers' employees were negligent in the total activity of failing to prevent the escape of the oil in the light of the circumstance of continued operation of the compressor.

██ Producers asserts that there is an irreconcilable conflict between the jury's answers to Special Issue No. 3 and its answer to Special Issue No. 6(a). In answer to the latter issue the jury found that "if there was negligence on the part of anyone in the use of defendants' compressor on the occasion in question for the purpose and in the manner in which it was being used, such negligence was the negligence of either Canadian River Drilling Company, Well Completions, Incorporated, or the two in combination."

It is our duty to harmonize jury findings when possible. Texas & Pacific Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280, 282; Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558. Keeping in mind the different theories of liability heretofore discussed, the answers to the two issues are at once harmonized. The answer to Special Issue No. 6(a) is that only Canadian River

and Well Completions were negligent in *using* the compressor for unloading the hole or in the manner of *using* the compressor. The answers to Special Issue No. 3 is not that Producers was negligent in either of those respects but that its employees were negligent in the manner in which they *operated* the compressor after it had been put in use for a particular purpose and in a particular manner. Negligence in the use of the compressor and in the manner of its use and negligence of those operating it could exist side by side, and negligence in both respects could be a contributing cause of the explosion. That the jury was discerning of this distinction is evidenced by its finding that the negligence of Canadian River and Well Completions in the use or manner of use of the compressor was not the sole proximate cause of the plaintiffs' injuries.

■ Producers argues strenuously that it cannot be held liable for the consequences of the negligence of McDonald and his fellow employees because the evidence shows as a matter of law that they were borrowed employees of Canadian River. Alternatively, Producers insists that the evidence on this issue at least raised a fact question for jury determination, and that the judgment against it should be reversed because of the refusal of the trial court to submit its requested special issue. What we shall have to say will dispose of both contentions.

■ Inasmuch as McDonald and his helpers were general employees of Producers, the burden was on it, if it wished to escape liability for their negligence, to introduce evidence showing, or from which it could reasonably be inferred, that in the operation of the compressor these employees had entered upon a special employment for Canadian River. The only evidence cited to us by Producers as raising the issue is this: Sears was supervising the drilling project for Canadian River, and telephoned Producers for the compressor; Sears had obtained the same compressor for use on other occasions, at times with, and at times without operatives furnished by Producers; on this occasion, three of Producers' employees, McDonald and two helpers, were sent with the compressor; Sears told McDonald where to tie on, after which McDonald waited until Sears was ready for him to start the compressor; when the compressor had pumped for ten or fifteen minutes without getting pressure, Sears told McDonald to shut it down; during the shut down period McDonald checked the compressor, replaced oil which had splashed out of the journal boxes and did not start up the compressor again until told to do so by Sears; when no pressure built up, McDonald shut down again, checked the journal boxes and the Manzell oiler and added oil, and then started up again and operated until the explosion occurred.

■ Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence. Restatement of the Law of Agency, Vol. 1, § 227; 35 Am.Jur., Master and Servant, 970, § 541; 57 C.J.S. Master and Servant § 566, pp. 284–291. As the Supreme Court of the United States put it in The Standard Oil Co. v. Anderson, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480:

> "To determine whether a given case falls within the one class or the other we must inquire whose is the work

being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."

 When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the question is relatively simple. As examples, see Magnolia Petroleum Co. v. Francis, Tex.Civ.App., 169 S.W. 2d 286, writ refused; Steele v. Wells, Tex. Civ.App., 134 S.W.2d 377, writ refused. It is when the contract between the employers is only implied or contains no provision for right of control that the problem becomes difficult. In such cases right of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc. Sometimes, as in Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94, the only reasonable inference to be drawn from the facts and circumstances in evidence is that right of control of the manner in which the employee performs his duties is surrendered to the special employer. Again, as in Insuror's Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217, the only reasonable inference to be drawn is that the general employer has retained right of control.

In the instant case we have no evidence of a contract expressly ceding right of control of McDonald in operating the compressor to Canadian River. Proper operation of the compressor required an operator with some degree of technical knowledge. The length of the special employment was relatively brief. McDonald was accountable only to Producers in determining whether the compressor was ready for use, when and where it needed oiling, and in continuing to operate the compressor after discovering that it was pumping oil. Canadian River neither exercised control over McDonald in these details of his work, nor is there any evidence whatsoever that it had a right to do so. There is no evidence that Canadian River could have replaced McDonald with another operator of its own choosing. Mere directions given to McDonald as to where to hook up, when to start and when to shut down the compressor in coordinating the work of all men and machinery on the project toward the ultimate object of unloading the hole does not raise the issue that right of control of McDonald in the manner of performing his work had been transferred from Producers to Canadian River. The Standard Oil Co. v. Anderson, supra. We hold that the trial court did not err in refusing to submit the issue to the jury.

What we have said disposes of Producers' first nine points of error and of the questions which we marked for review in granting writ of error. Six other points of error are presented. All are overruled. We discuss them briefly.

 The issues on damages were objected to because they authorized recovery of past and future loss of earnings without adequate proof of past employment and earnings to furnish a legal basis for computing the loss. While the evidence of past employment and earnings of both plaintiffs is indeed sparse, we agree with the Court of Civil Appeals that it is adequate to support an allowance for this element of their damages.

 One of the injuries sustained by Adkins was partial loss of hearing. He testified that because of this injury he had been rejected for employment in grocery stores by two or three merchants. He also testified that while a sense of hearing was

not absolutely necessary to work on a drilling rig, that type of work was dangerous and inability to hear shouted warnings in case of danger might be fatal. This testimony was relevant to the issue of loss of earning capacity. There was medical testimony that the degree of Adkins' loss of hearing could be reduced by use of a hearing aid. Producers objected to the instructions given by the trial court in connection with the damage issue because the jury was not instructed that damages should not be allowed for an incapacity which could be removed or alleviated by the use of ordinary care.

We do not regard failure of the trial court to give the instruction as error. While the medical testimony was certainly admissible and entitled to weight in determining the degree and extent of loss of earning capacity, to hold with Producers, where artificial aids or prosthetic devices can relieve some of the handicaps of permanent injuries, would lead to further complication of an already complicated set of instructions. City of Fort Worth v. Satterwhite, Tex.Civ.App., 329 S.W.2d 899, no writ history, relied on by Producers, is not in point. In that case the plaintiff failed to follow the instructions of her doctor for healing an injury of a purely temporary character. The Court of Civil Appeals held that failure of the trial court to instruct that the plaintiff could not recover damages which could have been avoided by following competent medical advice was reversible error. Without here passing on the correctness of that ruling, it is at once apparent that the problem in that case was entirely different from the problem in this case.

■ We agree with the holdings of the Court of Civil Appeals that the argument of the plaintiffs' counsel does not present reversible error and that the evidence does not show conclusively that the plaintiffs voluntarily exposed themselves to the hazard which resulted in their injuries.

The judgment of the Court of Civil Appeals is affirmed.