**ALUMINUM COMPANY OF AMERICA (ALCOA), Appellant,**

v.

**COMMERCIAL CONTRACTING COMPANY OF SAN ANTONIO, Inc., Appellee.**

No. 376.

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 8, 1968.

Rehearing Denied March 19, 1969.

O. F. Jones, Guittard, Henderson, Jones & Lewis, Victoria, Howard G. Hartzog, Port Lavaca, for appellant.

Cullen, Mallette, Maddin, Edwards & Williams, Harry F. Maddin, Victoria, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial that appellant Aluminum Company of America, sometimes hereafter "Alcoa", plaintiff below, take nothing against Commercial Contracting Company of San Antonio, Inc., sometimes hereafter "Commercial", defendant below.

Appellant asserts six points of error, the first four of which contend that Aloca was and is entitled to judgment as a matter of law. We have concluded that these points are without merit and should be overruled. In view of such holding, points five and six are immaterial to disposition of the case.

On or about Dec. 11, 1964 the parties entered into a written contract covering certain improvements to be constructed by Commercial to Alcoa's plant located at Port Comfort, Texas. Commercial subcontracted with John Bright and Associates, sometimes hereafter "Bright," for certain pipe-fitting work to be performed under its contract with Alcoa. One provision of the contract between Alcoa and Commercial read as follows:

"The Contractor (Commercial) shall save and hold the Owner (Alcoa) harmless from and against all liability, claims and demands on account of personal injuries (including death), or property loss, or damage to others (including the Contractor and employees and invitees of the Owner and of the Contractor) arising out of or in any manner connected with the performance of this contract, and caused by the negligent or wilful act or omission to act of the Contractor, a subcontractor or materialman hereunder, or the employees or invitees of any of them, and the Contractor shall at his own expense defend any and all actions based thereon and shall pay all charges of attorneys and all costs and other expenses arising therefrom."

On February 8, 1965, Bobby G. Holloway suffered injuries at Alcoa's plant site while working for Bright. Holloway settled his claim for workmen's compensation and then filed suit against Alcoa in the State Court. The suit was removed to the U. S. District Court at Victoria, Texas where Alcoa paid Holloway $6,000.00 in settlement. Alcoa then brought the instant suit against Commercial upon the above-quoted provision of the contract to recover the amount of $6,-000.00 plus $1,247.06 expenses and attorneys fees for defending and settling Holloway's suit and $2,469.69 as attorneys fees in the instant case.

On the trial of this case Bobby G. Holloway and George C. Beeler, an Alcoa employee, testified concerning the accident in which Holloway was injured. Holloway testified in substance as follows: On February 8, 1965, he was working on an eight inch pipeline in the Alcoa plant and particularly was installing a flange which connects two joints of pipe. When he began work the line was empty of fluid. The line was suddenly activated and liquid began to flow through the uncoupled flange

striking his face and body and causing him to fall and injure his back. George C. Beeler testified in substance as follows: He is a department foreman for Alcoa and was present when Holloway was injured on February 8, 1965. Mr. Leonard Stringer, who was Bright's superintendent or foreman over the pipefitters had made arrangements with Beeler to shut down the line in question while the work was being done. On the morning of Holloway's accident Stringer advised Beeler that he was ready to tie in the line and to cut off the flow. In order to accomplish this a pump located at a lower level had to be turned off. Beeler instructed the shift foreman and the operator to shut the pump down, drain it out and stand by it, and that instructions would be given when the work was finished to restart the pump. The two Alcoa employees most directly involved were Mr. Williams, the shift foreman, and Mr. Kolacny, the operator in charge of the equipment. Beeler advised Stringer that the pump was cut off and the line bled. Beeler said that Stringer was present when this was done. Holloway and another Bright employee began their work. There was some difficulty in getting the pipes or joint lined up and in placing and tightening bolts. Holloway and the other worker were taking the bolts apart and separating the joint when the accident happened. Without warning, the pump was turned on and a heavy spray or sheet of liquid, a soda solution, came out of the opening where the Bright employees were working. Holloway attempted to leave, grabbed for a ladder and missed it, held onto a line, slid down a beam, lost his grasp, hit a handrail and fell to the floor. Those present assisted Holloway at the scene and he was then taken in an ambulance to the hospital. Beeler said he was waiting for the work to be finished by the Bright employees, after which the pump was to be turned on. However, there was some misunderstanding among the other Alcoa employees, and the shift foreman signaled Kolacny to turn on the pump, which was done. The pump was turned off shortly thereafter by Kolacny when it was discovered that solution was coming down through the grating. Beeler said there was a break down in communications among the Alcoa employees, and that his instructions to them had been not to turn on the pump until he, Beeler, told them to do so. Beeler said that the pump was turned on "because somebody from Alcoa misunderstood some instructions."

The parties entered into a written stipulation in which they agreed

1. That the settlement between Aluminum Company of America and Bobby G. Holloway was a reasonable settlement under all of the circumstances existing in respect thereto.

2. That said settlement was a bona fide settlement.

3. That the expenses incurred by Aluminum Company of America in defending the claim and lawsuit asserted against it by Bobby G. Holloway was reasonable, and necessarily incurred.

4. That upon the occasion of the accidental injury to Bobby Holloway, that Adolph Kolacny was negligent in turning on the pump before the work was completed, and that such negligence was a proximate cause of the injuries to Bobby Holloway.

Alcoa's basic contentions under its first four points are that Holloway's injuries were proximately caused by the negligence of employees of Bright and also that one Adolph Kolacny, a general employee of Alcoa, was on the occasion of Holloway's injury a loaned employee or servant of Bright, and was, therefore, an employee for whose negligence Commercial would be responsible to Alcoa under the indemnity clause of contract.

The trial court submitted eighteen special issues to the jury. Some were not answered because of conditional submission. Under the verdict there are no findings that any act, omission or negligence of the employees of Bright caused Holloway's injuries. The jury found that the Alcoa em-

ployees were not borrowed employees of Bright on the occasion in question.

In view of the jury verdict Alcoa's position here is necessarily that all fact issues essential to its cause of action were conclusively established in its favor and that it is entitled to recover as a matter of law. Alcoa says that the trial court should have disregarded the jury answers to special issues 4, 5, 7, 8, 13, 16 and 17. The jury answer to special issue no. 4 was in effect that Bright was not negligent in failing to provide a proper wrench for Holloway on the occasion in question. Issue no. 5, involving proximate cause, was conditionally submitted and unanswered. The jury answer to special issue no. 7 was in effect that Bright was not negligent in failing to provide a scaffold for Holloway. Issue no. 8, involving proximate cause, was not answered because it was conditionally submitted. The jury answer to special issue no. 13 was in effect that Holloway's own negligence in the time he took to make up a piping joint was not a proximate cause of his injuries. The jury answer to special issue no. 16 was in effect that Holloway's own negligence in the putting of bolts at the top of a joint was not a proximate cause of his injuries. The jury answer to special issue no. 17 was in substance that on the occasion in question George Beeler and the Alcoa employees concerned with the operation of the caustic soda line and pump in question were not borrowed employees of the subcontracting firm of John Bright and Associates working under the direction of the John Bright foreman, Leonard Stringer.

■ We overrule appellant's first four points. The evidence does not conclusively establish that the acts or omissions of the employees of Bright constituted negligence or the proximate cause of Holloway's injuries. The evidence is legally and factually sufficient to support the jury findings which were unfavorable to Alcoa on such isses. Alcoa's own evidence, particularly the testimony of George C. Beeler, strongly tends to establish that the negligence which proximately caused Hollo-

way's injuries (for which Alcoa paid $6,-000.00 in settlement) was on the part of employees of Alcoa and was not by employees of Bright. The jury was authorized to answer the special issues as it did and there is no basis in the record for disregarding the findings on issues 4, 5, 7, 8, 13 and 16.

■ The evidence also does not conclusively establish that the employees of Alcoa were the borrowed servants of Bright. We sustain appellee's contention under its counterpoint one that there was at least a fact issue in such respect to be resolved by the jury. The finding of the jury that such Alcoa employees were not borrowed servants of Bright is amply supported by the evidence, and the jury answer to special issue no. 17 cannot be set aside. The jury could have believed from the evidence that the Alcoa employees deactivated the line and turned off the pump in question so that the Bright employees would have a safe place in which to work; that the Alcoa employees, including Beeler and Kolacny, were not performing Bright's work, but were standing by while it was being done by Bright employees; and that the details of shutting down the pump and line or restarting and reactivating the same were not under the control of Bright or his employees.

The definition given in connection with special issue no. 17 (which the jury answered in effect that the Alcoa employees were not borrowed servants of Bright working under the direction of its foreman Stringer) reads as follows:

"In connection with the foregoing Special Issue, you are instructed that by the term 'borrowed employee' means an employee of one employer who is temporarily loaned to another employer, in order to allow the borrowing employer to fulfill or complete the borrowing employer's obligations or work, and which borrowing employer has the right to control and direct the borrowed employee's activity, not merely as to the result to be

obtained, but also as to the manner and method in which the work is to be done."

In Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.Sup.Ct.1963), the court held in part as follows:

"Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence. Restatement of the Law of Agency, Vol. 1, § 227; 35 Am.Jur., Master and Servant, 970, § 541; 57 C.J.S. Master and Servant § 566, pp. 284–291."

\*   \*   \*   \*   \*   \*

"\* \* \* Mere directions given to McDonald as to where to hook up, when to start and when to shut down the compressor in coordinating the work of all men and machinery on the project toward the ultimate object of unloading the hole does not raise the issue that right of control of McDonald in the manner of performing his work had been transferred from Producers to Canadian River. \* \* \*"

On July 17, 1968 the Supreme Court of Texas handed down its decision in the case of J. A. Robinson Sons, Inc. v. Wigart, Tex., 431 S.W.2d 327. Robinson contended that it was not legally responsible to plaintiffs because Britain, its regular employee, had become the employee of Roman-Chase Company at the time of the accident there involved. The jury found that Britain was not such a borrowed employee. The Supreme Court overruled Robinson's contention that Britain was a loaned employee as a matter of law. Among other authorities the court discussed *McKay*, and reiterated the holdings therein including the quotation first hereinabove set out. The judgment was reversed on other grounds relating to the charge of the court. This latest expression of the Supreme Court concerning the borrowed servant doctrine strongly supports appellee's position here.

In connection with its contention that the Alcoa employees were borrowed servants of Bright appellant cites six cases. Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.Sup.Ct.1963); Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94 (Tex.Sup.Ct.1947); Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217 (Tex.Sup.Ct.1949); Magnolia Petroleum Co. v. Francis, 169 S.W.2d 286, (Tex.Civ.App., Beaumont, 1943, wr. ref.); Maryland Casualty Co. v. Donnelly, 50 S.W.2d 388 (Tex.Civ.App., Waco, 1932, wr. dism.); and McKinney v. Tromly, 386 S.W.2d 564, 12 A.L.R.3d 1011 (Tex.Civ. App., Tyler, 1964, wr. ref. n. r. e). The first three of these cases are cited or discussed in Robinson v. Wigert, supra. In Magnolia Petroleum Co. v. Francis, supra, it was undisputed that Magnolia had expressly loaned its general employees to its contractor. Maryland Casualty Co. v. Donnelly, supra, is cited for the proposition that the borrowed employee is entitled to compensation from the Workmen's Compensation carrier for the borrowing employer. McKinney v. Tromly is cited for the rule that the borrowed employee can subject the borrowing employer to liability for his negligent actions. None of these cases lend support to appellant's contention here. It is apparent that the jury could properly find that Bright did not have the right to control the activities of the Alcoa employees.

In view of the foregoing holdings, appellant's points five and six which assert that Alcoa is entitled to attorneys fees in this case and that the trial court erred in rendering judgment for Commercial on the theory of laches, become immaterial to disposition of the case.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

Appellant's motion for rehearing and the brief in support thereof emphasize the contention that the employees of Alcoa were borrowed servants of Bright as a matter of law, and that Commercial would therefore be liable under the indemnity provisions of the contract between Alcoa and Commercial. Appellant particularly argues that the provisions of that contract expressly and conclusively make the Alcoa employees borrowed servants of Bright.

The specific contractual provisions relied on by appellant are as follows:

"1. Article 1: Statement of Work.

The Contractor shall complete, and shall furnish all supervision, labor, materials, tools, equipment, unloading, hauling, taxes, insurance and all other things necessary (unless otherwise herein provided) for the completion of the mechanincal, piping and instrumentation for miscellaneous facilities at the Owner's Point Comfort, Texas Works, as herein specified.

## GENERAL CONDITIONS

"Article 9. Materials Furnished By Owner.

No materials, supplies, equipment, labor, services or any other things required for the performance of the work hereunder are to be furnished by the Owner, unless this contract otherwise expressly provides. In case this contract expressly provides that any materials, supplies, equipment, labor, services or any other things will be furnished by the Owner, the Owner will use reasonable efforts to furnish the same when required by the Contractor, but the Owner will not be liable for any delay in furnishing the same.

"Article 11. Other Work.

A. It is understood that work not covered by this contract may be performed by the Owner or others in the same area that must be occupied by the Contractor. In such event the Contractor shall fully cooperate with the Owner and such others in scheduling his work so that a minimum of interference will occur. It is also understood that the Owner may occupy the premises during performance of work by the Contractor hereunder and that such occupancy shall not constitute acceptance of the work by the Owner.

"Article 12. Subcontracts.

The Contractor shall procure the Owner's written permission before subletting or subcontracting any portion of the work. No subcontract shall relieve the Contractor from his obligations to the Owner hereunder or shall purport to bind the Owner, but each subcontract shall contain a provision permitting assignment to the Owner.

"Article 24. Independent Contractor.

The Contractor hereunder shall be an independent contractor, and the Owner will have no right to exercise supervision as to the manner or method of doing the work."

Appellant also places emphasis upon certain language and holdings in Producers Chemical Company v. McKay, 366 S.W. 2d 220 (Tex.Sup.Ct.1963) included within the following quotation:

" * * * As the Supreme Court of the United States put it in The Standard Oil Co. v. Anderson, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480:

'To determine whether a given case falls within the one class or the other we

must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.'

When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the question is relatively simple. As examples, see Magnolia Petroleum Co. v. Francis, Tex.Civ. App., 169 S.W.2d 286, writ refused; Steele v. Wells, Tex.Civ.App., 134 S.W. 2d 377, writ refused. It is when the contract between the employers is only implied or contains no provision for right of control that the problem becomes difficult. In such cases right of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc. Sometimes, as in Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94, the only reasonable inference to be drawn from the facts and circumstances in evidence is that right of control of the manner in which the employee performs his duties is surrendered to the special employer. Again, as in Insuror's Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217, the only reasonable inference to be drawn is that the general employer has retained right of control.

In the instant case we have no evidence of a contract expressly ceding right of control of McDonald in operating the compressor to Canadian River. Proper operation of the compressor required an operator with some degree of technical knowledge. The length of the special employment was relatively brief. McDonald was accountable only to Producers in determining whether the compressor was ready for use, when and where it needed oiling, and in continuing to operate the compressor after discovering that it was pumping oil. Canadian River neither exercised control over McDonald in these details of his work, nor is there any evidence whatsoever that it had a right to do so. There is no evidence that Canadian River could have replaced McDonald with another operator of its own choosing. Mere directions given to McDonald as to where to hook up, when to start 'and when to shut down the compressor in coordinating the work of all men and machinery on the project toward the ultimate object of unloading the hole does not raise the issue that right of control of McDonald in the maner of performing his work had been transferred from Producers to Canadian River. The Standard Oil Co. v. Anderson, supra. We hold that the trial court did not err in refusing to submit the issue to the jury."

Appellant argues that in this case, under the above-quoted provisions of the contract and the holdings in *McKay* as well as those in Magnolia Petroleum Co. v. Francis, 169 S.W.2d 286 (Tex.Civ.App., Beaumont, 1943, wr. ref.), "the contract between Alcoa and Commercial is an express statement by the parties that any work done by Alcoa employees to enable Commercial to fulfill its contract would make the Alcoa employees borrowed servants of Commercial, and in this instance Bright undeniably stands in the position of Commercial." We disagree. The contractual provisions relied on by appellant do not have the effect contended for by it. As we held in our original opinion, there was a fact issue as to whether the Alcoa employees were borrowed servants of Bright on the occasion in question. By its answer to special issue No. 17, the jury determined that the Alcoa employees

were not such borrowed servants, and that finding is supported by the evidence.

Other grounds of appellant's motion for rehearing are also without merit. We adhere to our original disposition of the case affirming the judgment of the trial court.

Appellant's motion for rehearing is overruled.