**HAWS & GARRETT GENERAL CONTRACTORS, INC., Appellant,**

**v.**

**GORBETT BROS. WELDING COMPANY, Inc., Appellee.**

**No. 17229.**

Court of Civil Appeals of Texas, Fort Worth.

June 11, 1971.

Rehearing Denied Sept. 10, 1971.

Shannon, Gracey, Ratliff & Miller, and Kleber C. Miller, Fort Worth, for appellant.

Brown, Herman, Scott, Young & Dean, and J. Shelby Sharpe, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Plaintiff, Haws & Garrett General Contractors, Inc., brought suit for damages claimed to have been sustained by negligent tort against defendant, Gorbett Brothers Welding Company, Inc. Said defendant, Gorbett Brothers, answered by general denial coupled with pleading "in avoidance" on the contention that by express contract the plaintiff had agreed to hold Gorbett Bros. "harmless" and free of any liability for the damages plaintiff allegedly sustained. To such the plaintiff made its denial, coupled with the claim that even if such contract had been made its promise had been made without consideration and therefore would be unenforceable.

Gorbett Bros. filed cross-action against plaintiff for indebtedness pursuant to express contract owed by plaintiff for services and equipment rental accrued subsequent to the date plaintiff allegedly sustained damages for which its original suit was brought.

Trial was to a jury, but on completion of the testimony in the case the court withdrew the same, and on the motion of Gorbett Bros. rendered judgment in its behalf in two respects, viz: First, that plaintiff take nothing by its suit against Gorbett Bros.; Second, that Gorbett Bros. have and recover the amount of indebtedness for which it had brought cross-action against plaintiff.

Judgment affirmed in part and in part reversed and remanded.

Plaintiff and Gorbett Bros. had engaged in a general course of dealing over a period of about ten years. The evidence in the case showed the nature of the contractual relationship under which their mutual dealings had been conducted subsequent to September of 1966. These transactions were identical to that in which the parties engaged on the material date of August 13, 1968, when plaintiff's loss and damage occurred. We may, for purposes material to the decision, treat the same as having proximately resulted from the negligent act of the operator of the machinery of Gorbett Bros. while operating the same for the interest of plaintiff.

The usage and custom of the parties to the suit, as between themselves, was shown to have been as follows: the plaintiff operated as a general contractor, oftentimes in the erection of heavy structures. In the placement of heavy beams, etc., it would frequently require the services of Gorbett Bros. The latter corporation was in the business of renting cranes and hoisting equipment, along with its truck, complete with an operator—and usually with his helper or "oiler"—which it would deliver to the plaintiff's "job-site" ready to perform the required work. There was a usual and customary hourly charge made during the period any Gorbett Bros. crane was in use for the benefit of the plaintiff, including a like charge for the operator and "oiler".

The bill or charges of Gorbett Bros. ordinarily would be submitted to the plaintiff

a few days or weeks after a transaction outlined in the preceding paragraph. However, at the "job-site"—and usually about the time of completing the work performed by the employees and equipment of Gorbett Bros.—the Gorbett Bros.' employee would present an instrument labeled "Work Order" to plaintiff's representative, usually his superintendent on the particular job, requesting signature on the copy to be returned to the operating office of Gorbett Bros.

An example of such a work order was that which was used on the occasion when plaintiff's damage was sustained on August 13, 1968. It bore what might be termed a type of letterhead of Gorbett Bros., giving the date of August 9, 1968, when plaintiff's order for hoisting equipment was telephoned to Gorbett Bros. and recited that it was for "HAWS & GARRETT CONSTR. CO.", followed by the language: "WORK ORDER #8 Motor Crane With Operator & Oiler 70′ Boom, #11 Motor Crane With Operator & Oiler 60′ Boom, to set bridges precast 77′ 40,000#. Tolar, Texas, Star Hollow Ranch. Turn right on Hiway 201 to Ranch, Tuesday August 13th. Texas Hiway Permits". Below the above, most of which was typed into the form, appeared printed language, the material portion of which we quote: " * * * The Customer (plaintiff) * * * agrees to indemnify, protect and save harmless Owner (Gorbett Bros.) against any and all claims for damages * * * arising out of or connected with the operation of said equipment while the same is under Customer's supervision or in his care. Any person using Owner's material or equipment for which no charge is made by Owner assumes all risks incident to such use * * *." On the line below was a space for signature.

On the material date, following the occurrence of plaintiff's damage and upon the conclusion of the work for the day, R. L. Melton, who was supervising plaintiff's operations at the job-site, was asked to sign said instrument. He did so sign. There was evidence of record to the effect that Melton had no actual authority to contract as apparently done for plaintiff by the language from which we have quoted. However, it was undisputed that one Al Neaves had ordered Gorbett Bros.' services and equipment in behalf of plaintiff and his authority to act for plaintiff in said respect is not questioned.

Over the period during which plaintiff and Gorbett Bros. had done business since September of 1966 all the instruments, of which the above described work order is an example, contained the identical printed language relative to plaintiff's contractual obligation to hold Gorbett Bros. "harmless" as applied to any damage arising out of or connected with the use of its equipment while under plaintiff's supervision.

Under evidence presented by plaintiff the contention was advanced that there was no consideration for the execution of the contract, considered as executed by R. L. Melton after plaintiff's damage had been sustained. The contention is without application to the case. The instrument in question is not of itself the contract of the parties, but presents merely a reduction to writing of the undisputed terms of the contract in force at the time. There were many other similar instruments in which the contractual terms had been reduced to writing on prior occasions. That signed by Melton was not the first in which the nature of the plaintiff's agreement was set down in written form.

Here a proper view of the parties' contract would not be the writing, although circumstances were such that the written language unquestionably evidenced the terms of the contract under which the parties were operating.

■ Plaintiff's proof made an issue of whether it had ever taken note of the "hold harmless" language of the contract, or was ever mentally aware of it prior to Gorbett Bros.' declaration thereupon in

pleadings filed in the case. However, such evidence does not suffice to raise any fact issue upon the binding effect of such language. What plaintiff necessarily refers to is its own want of mental assent to the contractual condition upon which Gorbett Bros. rendered service by furnishing equipment and operators. It seeks to advance the proposition that since there was no meeting of the minds with Gorbett Bros. upon such condition no contractual obligation devolved upon it to hold Gorbett Bros. "harmless".

But the absence of plaintiff's mental assent to the condition would not be essential for it has so conducted itself that it is in the posture of having appeared to assent and Gorbett Bros. was entitled to proceed in reliance upon plaintiff's apparent agreement. 17 C.J.S. Contracts § 32, "—Manifest and Secret Intention", p. 642. Under the circumstances of the case, in particular the development of a usage and general course of dealing between the parties the presence of the contractual condition and obligation of plaintiff, evidenced by the repetition of the language in the many antecedent transactions of which the law would deem it to have knowledge, the duty evolved upon plaintiff, if it desired to escape or avoid the consequences of its contractual obligation, to speak out and protest and insist upon an amendment of the arrangement. Having failed to speak out and protest and having by its silence and restraint from any protest prior to the date and time of its loss and damage, plaintiff must be held as legally bound to the provisions of the contract because the law would deem it to be "on notice" of the terms and conditions under which Gorbett Bros. entered into contractual relations with it for equipment use, etc. 17 C.J.S. Contracts § 41, "—Forms of Acceptance". subsection e, "Acceptance by Silence or Acquiescence", p. 670. Although the case is not analogous it is obvious from language of the opinion that our conception of applicable legal principles is in harmony with that of the author of the opinion in

American Maid Flour Mills v. Lucia, 285 S.W. 641, 643 (Galveston Civ.App., 1926, no writ history). Citation to the case was found in 13 Tex.Jur.2d, p. 138, "Contracts", Sec. 19, "(acceptance)—By silence". See also Restatement of the Law, Contracts, Sec. 72, "Acceptance by Silence or Exercise of Dominion", and Williston on Contracts, Revised Edition, Sec. 91C, "Authorization by the offeree to treat his silence as assent".

■ Plaintiff advances the contention that there was at least a fact issue raised upon the matter of whether, as of the time of its loss and damage, the Gorbett Bros.' equipment was under its supervision. There is evidence indicating the operator's disregard of its superintendent's suggestion relative to the manner by which the operator of the Gorbett Bros.' crane should endeavor to conduct the lifting of the very bridge support which broke as the result of the crane operator's negligence. In other words, the evidence showed action of the Gorbett Bros.' crane operator contrary to the supervision sought to be exercised by plaintiff's superintendent. It is "right of supervision" rather than obedience thereto with which we are concerned, and this persisted, interrupted by failure or refusal of the crane operator to follow plaintiff's suggestion. If the circumstance was such that plaintiff's superintendent desired he could have stopped the use and operation of the crane of Gorbett Bros. by its operator. This he did not elect to do. Instead he proceeded, and the crane operator proceeded in the attempt to place the bridge support where the plaintiff's supervisor had directed. Under applicable contract construction the use of Gorbett Bros.' equipment remained under plaintiff's supervision. See Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.Sup., 1963).

There are additional points of error relating to the propriety of the action of the trial court in removing the case from the jury relative to the plaintiff's suit predicat-

ed upon negligent tort. We have examined each of them and overrule them all. Extended discussion thereof is unwarranted in view of holdings. The court's action in rendering a "take nothing" judgment as applied to plaintiff's suit for damages for negligent tort was proper.

We proceed to the matter of Gorbett Bros.' suit by way of a cross-action for debt. Such indebtedness allegedly was owed Gorbett Bros. pursuant to a contractual performance in behalf of the plaintiff rendered subsequent to date on which plaintiff's loss and damage had been sustained. The issues relative thereto are severable from those involved in our antecedent discussion.

■ In such a case, where one has performed as Gorbett Bros. claims to have done, the suit may be viewed as one for the return specific performance of payment. That is the posture of the instant case. Of course, it is necessary (absent concessions or admissions which eliminate necessity therefor) for him in the position of plaintiff to prove that he had performed and thereby discharged his consideration, and to furthermore prove the amount of the payment due from the defendant as the return consideration. To apply that principle to the instant case this demonstrates that Gorbett Bros. was required to prove the existence of the contract, its complete performance of the consideration required of it, and that the amount demanded was agreed upon by cross-defendant (plaintiff) or represented the figure calculable under the contract as the proper amount to be paid.

■ It is obvious that, as the result of the attention paid to the more interesting legal questions posed by the plaintiff's suit for damages as the result of negligent tort, Gorbett Bros. failed to prove elements of its suit for debt. It is furthermore obvious that the want of proof relative thereof would be available upon the occasion of another trial. Even considered as having been proved as part of Gorbett Bros.' *prima facie* case such evidence would merely raise fact issues precluding any disposition by judgment other than upon jury verdict absent admissions of or evidence by plaintiff obviating submission to a jury. In view thereof the case, as applied to the cross-action of Gorbett Bros., must be reversed and remanded to the trial court.

It is our order that the suit of Haws & Garrett General Contractors, Inc. be severed from the cross-action of Gorbett Brothers Welding Company, Inc. for purposes of the judgment of this court.

Judgment of the trial court to the effect that plaintiff Haws & Garrett General Contractors, Inc. take nothing by its suit is affirmed.

Judgment of the trial court awarding the amount for debt in favor of Gorbett Brothers Welding Company, Inc. against Haws & Garrett General Contractors, Inc. is reversed, and said cause is remanded.

Costs of the appeal are assessed against both parties, in the measure of one-half payable by each.

## ON MOTION FOR REHEARING

LANGDON, Justice.

I would grant the appellee's motion for rehearing and sustain the action of the trial court in awarding the appellee the sum of $1,041.21 on its cross-action for debt.

In my opinion the appellee has complied with all of the requirements set out in the original opinion of this court pertaining to the cross-action of appellee. First, the appellee proved performance under the very contract the court sustained in affirming

the trial court's judgment on the negligence feature of the case. Second, the amount sued for and awarded by the court represents a figure which is calculable and ascertainable from the contract in question in a definite amount.

The invoices involved were introduced into evidence. They reflected the number of hours "that were worked" and the charges for such services. The simple arithmetic of multiplying the number of hours worked times the charges per hour less the amount paid for such services produced the very accurate figure of $1,041.21 due on the account and awarded by the trial court. It is undisputed that this was the correct amount. There was no dispute as to the number of hours worked and the hourly basis for such work as reflected by the invoices.

The appellant's position was simply that it did not owe the money reflected by the invoices because the work and the amount due for such work, subject of appellee's cross-action for debt, was necessitated by the negligence of appellee's employees. The negligence phase of this case was resolved against the appellant by the trial court and by the original opinion of this court affirming the action of the trial court in that respect.

I would hold that all of the elements of appellee's suit for debt were proven. Under the facts proven and admitted with reference to the cross-action for debt, the amount awarded to the appellee is undisputed and therefore no fact question is presented on this phase of the case. Unquestionably the invoices, other evidence and testimony would be the same upon retrial of the matter and the trial court would be required to instruct a verdict for the appellee on its cross-action for debt.

I would reform the original opinion of this court by affirmance of the judgment of the trial court in all respects.