# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

═══════════════════
## NO. 03-05-00401-CV
═══════════════════

**Texas Property and Casualty Guaranty Association, for Paula Insurance
Company, an Impaired Insurer, Appellant**

**v.**

**National American Insurance Company and Clayton Mark Beck, Appellees**

═══════════════════════════════════════════════════════════════════════
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN301673, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING
═══════════════════════════════════════════════════════════════════════

## O P I N I O N

This is an appeal from a suit for judicial review of a workers' compensation decision concerning which of two companies—Jerry Gregory, Inc., or Hunter Trucking—was the employer of two workers at the time the workers were injured in a trucking accident. The outcome of this dispute, in turn, controls whether National American Insurance Company (NAIC), Gregory's workers' compensation insurance carrier, or Texas Property Casualty Insurance Guarantee Association (TPCIGA), the successor to Hunter's carrier, must pay medical and income benefits. After the Workers' Compensation Commission (the Commission) made a final determination that Gregory was the employer and NAIC was therefore liable to pay benefits, NAIC brought a suit for

judicial review. However, after a jury trial under the "modified *de novo*" standard applicable to disputes relating to compensability, eligibility, or amount of income benefits, *see* Tex. Lab. Code Ann. § 410.301 (West Supp. 2005), the district court rendered judgment on a verdict that Hunter was the employer, making TPCIGA the liable carrier.

TPCIGA appeals, contending principally that this dispute concerns "coverage," not compensability, and that "coverage" disputes must be decided under the substantial-evidence review regime of the Administrative Procedures Act. *See id*. § 410.255 (West 1996). TPCIGA contends that, by reviewing the administrative decision under the modified *de novo* standard, the district court exceeded its "subject-matter jurisdiction" to disturb the Commission's order. *See Morales v. Liberty Mut. Ins. Co.*, 169 S.W.3d 485, 488 (Tex. App.—El Paso 2005, pet. filed).

We will affirm the judgment of the district court.

## BACKGROUND

The underlying dispute centers on the business relationship between Hunter and Gregory. Gregory was a common carrier licensed by the U.S. Department of Transportation; Hunter owned tractor and trailer equipment. In July 2000, the companies executed an agreement whereby Gregory leased the "equipment and services" of Hunter. The agreement provided that:

- Gregory "shall have exclusive possession, control, and use of the equipment, and shall assume complete responsibility for the operation of the equipment for the duration of the lease."

- Hunter "is responsible for providing all fuel, meals and lodging, repairs and maintenance to tractor and trailer, tolls, ferries, detention, etc., necessary in the operation of equipment while in the service of [Gregory]."

2

- "[T]he services of [Hunter] under the terms of the lease agreement is that of independent contractor and that no 'employee-employer' relationship exists between [Hunter] and [Gregory]. [Hunter] is therefore responsible for providing his own workman's compensation insurance, employment and income taxes, etc. Further, any drivers or employees of [Hunter] are the complete responsibility of [Hunter]."

- Gregory "agrees to compensate [Hunter] in the amount of 75% of gross revenues for each trip ticket. [Gregory] will provide all permitting necessary and will pay all fuel taxes."

In October 2000, Benjamin Brown and Clayton Mark Beck were injured in a single-vehicle accident while they were driving a truck owned by Hunter, pulling a trailer owned by Gregory, on a trip assigned to them by Gregory. Beck was left a paraplegic. Both Beck and Brown filed workers' compensation claims.

Hunter's workers' compensation carrier, Paula Insurance, and Gregory's carrier, NAIC, both denied liability for benefits, each maintaining that Brown and Beck were employees of the other's insured at the time of the accident. NAIC and Paula submitted the dispute to the Commission, and a benefits contested case hearing was held. *See* Tex. Lab. Code Ann. §§ 410.151-.169 (West 1996 & Supp. 2005). The hearing examiner concluded that Gregory was the workers' employer at the time of the accident and that NAIC was thus liable for benefits. NAIC appealed to the Commission's appeals panel, *id*. §§ 410.201-.208 (West Supp. 2005), which rendered a final decision affirming the hearing examiner's decision. *See id*. §§ 410.203-.204.

NAIC filed a petition for judicial review and a jury demand in McLennan County district court. As required by the workers' compensation act, Paula and the two injured workers, Beck and Brown, were named as defendants and served. *See id*. § 410.253. Paula filed a general

3

denial and its own jury demand. While the case was pending, Paula was declared insolvent and placed in receivership, and the Texas Department of Insurance designated Paula as an impaired insurer. *See* Tex. Ins. Code Ann. art. 21.28-C, §§ 5(9), 8(b) (West Supp. 2005). TPCIGA, which is statutorily obligated to discharge the policy obligations of impaired insurers, intervened and was substituted for Paula. *See id*. TPCIGA filed an agreed motion to transfer venue to Travis County, which was granted. *See id*. § 10(g) (venue in suit by or against TPCIGA in Travis County). The Commission subsequently intervened. *See* Tex. Lab. Code Ann. § 410.254 (West Supp. 2005) (Commission may intervene in suit for judicial review of final decision of Commission's appeals panel).

NAIC and TPCIGA filed cross-motions for summary judgment, and the district court denied both, finding that fact questions remained regarding whether Brown and Beck were employees of Hunter or Gregory. Beck, who had previously answered with a general denial of NAIC's claims that he and Brown were Hunter employees, announced at trial that he instead agreed with plaintiff NAIC's position.[1] Beck proceeded to participate in the trial as a plaintiff, advocating, alongside NAIC, the position that he was a Hunter employee.

At the conclusion of the trial, the district court submitted a single issue to the jury: whether Hunter was the employer of Beck and Brown at the time of their injuries. The jury found in the affirmative. Following the verdict, but before judgment, Beck filed a motion to be realigned as a plaintiff, urging that he had "sat at Plaintiff's table, and vigorously advocated Plaintiff's

---

[1] Brown, by contrast, never answered and did not participate at trial.

4

position." Over TPCIGA's objection, the district court granted the motion. The court subsequently rendered judgment on the verdict that Beck and Brown were Hunter employees at the time of their accident and that TPCIGA was liable for benefits. TPCIGA appealed.

## DISCUSSION

TPCIGA brings five issues on appeal. In its first issue, TPCIGA contends that the district court lacked subject-matter jurisdiction to adjudicate NAIC's suit for judicial review. In its second issue, TPCIGA complains that the district court erred in permitting Beck to participate at trial as a *de facto* plaintiff. In its third issue, TPCIGA challenges the legal and factual sufficiency of the jury's finding that Hunter was the claimants' employer at the time of the accident. TPCIGA's remaining two issues concern the district court's exclusion of two trial exhibits, a copy of the commission's appeals panel decision and a letter from Gregory's owner to Beck complaining of log book violations.

### Subject-matter jurisdiction

In its first issue, TPCIGA presents a jurisdictional argument rooted in the distinctions between the Act's "two mutually exclusive categories" of appealable commission decisions and their corresponding "separate, distinct, and quite different judicial review paths." 1 John T. Montford, et al., *A Guide to Texas Workers' Comp Reform* § 6.64 cmt a (1991) [hereinafter "Guide"]. TPCIGA's contentions can be summarized: the parties and district court have ventured down the wrong judicial review path, and this error deprived the district court of subject-matter jurisdiction.

5

*The Act's two judicial review paths*

Under earlier workers' compensation law, courts reviewed final administrative determinations under a single *de novo* review standard, with a right to jury trial. *See Rodriguez v. Service Lloyd Ins. Co.*, 997 S.W.2d 248, 252 (Tex. 1999). In its 1989 revisions to the workers' compensation system, the legislature replaced that standard for judicial review with two different standards, "modified *de novo*" and substantial evidence. *See id*. at 252-53.

Under the "modified *de novo*" standard, the parties try, before the trial court or a jury, only those issues finally decided by the commission appeals panel, and the party appealing has the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. §§ 410.304 (West Supp. 2005). The trier of fact must consider, but is not bound by, the appeals panel's decision. *Id*. Venue in a suit for judicial review under the modified *de novo* standard is generally in the county where the injured employee resided at the time of injury. *Id*. § 410.252(b).

In disputes other than those governed by the modified *de novo* standard, the appeals panel's decision is appealable, if at all, under the more deferential substantial-evidence rule and "in the manner provided for judicial review of a contested case" under subchapter G of the Administrative Procedures Act. *Id*. § 410.255 (West 1996); *see* Tex. Gov't Code Ann. § 2001.171-.178 (West Supp. 2005). Under subchapter G, the trial court sits without a jury and is generally confined to the agency record. Tex. Gov't Code Ann. § 2001.175(e). These provisions have been viewed as also requiring that any suits for judicial review governed by the substantial-evidence standard be filed exclusively in Travis County District Court, like other suits governed by APA subchapter G. *Rodriguez*, 997 S.W.2d at 253; Montford, Guide § 6.64 cmt b; *see* Tex. Gov't Code

Ann. § 2001.176(b) ("Unless otherwise provided by statute . . . the petition must be filed in a Travis County district court.").

The choice of judicial review paths is determined by the nature of issues in dispute. If a party seeks review of a final appeals panel decision "regarding compensability or eligibility for or amount of income or death benefits," the modified *de novo* procedures apply. Tex. Lab. Code Ann. § 410.301; *Rodriguez*, 997 S.W.2d at 253. Review of other appealable issues is governed by the substantial-evidence rule. Tex. Lab. Code Ann. § 410.255(a); *Rodriguez*, 997 S.W.2d at 253.

### The parties' contentions

At every procedural juncture prior to this appeal, the parties and lower courts concurred in following the modified *de novo* review path. NAIC filed a petition in McLennan County district court; at the time of the injury, Beck was a resident of that county. *See* Tex. Lab. Code Ann. § 410.252(b). NAIC also filed a jury demand. TPCIGA's predecessor, Paula Insurance, filed a general denial and its own jury demand. These pleadings were subsequently adopted by TPCIGA. The suit was later transferred to Travis County district court under an agreed order unrelated to the determination of review path. The parties, without objection, tried the case to a jury under the modified *de novo* review standard.

On appeal, TPCIGA contends, for the first time, that NAIC's suit should have instead followed the substantial-evidence review path because the suit presented issues of "coverage," which TPCIGA distinguishes from compensability, eligibility or amount of income benefits. While acknowledging the inconsistency between its current position and its actions below, TPCIGA insists that it may raise its coverage-versus-compensability argument on appeal because it implicates the

7

district court's subject-matter jurisdiction to render its judgment. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993) (subject-matter jurisdiction can neither be waived nor established by consent). TPCIGA urges that the lower courts exceeded their subject-matter jurisdiction in at least two ways. First, observing that NAIC initially filed its judicial review suit in McLennan County, TPCIGA argues that the Travis County district court had exclusive subject-matter jurisdiction to entertain NAIC's suit, *see* Tex. Lab. Code Ann. § 410.255; Tex. Gov't Code Ann. § 2001.176(b), suggesting that the McLennan County district court had no jurisdiction but to dismiss the case. *See*, *e.g.*, *Leonard v. Cornyn*, 47 S.W.3d 524, 527 (Tex. App.—Austin 1999, pet. denied) ("It is evident that the trial court was powerless to rule on the motion to transfer venue if the court lacked subject-matter jurisdiction.").[2] Second, TPCIGA contends more generally that the Travis County district court's application of the modified *de novo* standard when it should have applied substantial-evidence review exceeded the court's subject-matter jurisdiction. While acknowledging that standards of review are ordinarily not jurisdictional, even though they define the balance of power between and among tribunals, TPCIGA emphasizes the separation-of-powers implications of judicial review of executive agency orders, suggesting that reviewing courts exceed their subject-matter jurisdiction by failing to give agency actions the required degree of deference. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000); *Sierra Club v. Texas Natural Res.*

---

[2] Under this view, the fact that NAIC's suit was later transferred to Travis County would not have cured any jurisdictional defect existing when the suit was first filed in McLennan County.

8

*Conservation Comm'n*, 26 S.W.3d 684, 688 (Tex. App.—Austin 2000), *aff'd*, 70 S.W.3d 809 (Tex. 2002).[3]

To support its arguments that NAIC's suit was governed by the substantial-evidence review process of section 410.255 and that the district court lacked subject-matter jurisdiction, TPCIGA relies chiefly upon the El Paso Court of Appeals's recent decision in *Morales v. Liberty Mutual Ins. Co.*, 169 S.W.3d 485 (Tex. App.—El Paso 2005, pet. filed). The underlying dispute in *Morales* concerned whether a worker who died from job-related injuries was an employee of either of two subscriber companies, an employee of a non-subscriber, or an independent contractor at the time of injury, determinations that controlled whether his surviving wife would be entitled to benefits. *Id*. at 486-87. The trial court dismissed for want of jurisdiction the wife's suit for judicial review, and the court of appeals affirmed. *Id*. at 487. The court agreed with the appeals panel's view that "[t]he status of being an employee of an insured for which a carrier is liable is an issue of

---

[3] Intertwined with these arguments, TPCIGA asserts that because NAIC's petition sought only modified *de novo* review, NAIC failed to properly invoke the district court's subject-matter jurisdiction.

TPCIGA also contends that NAIC filed its petition for judicial review more than thirty days after the appeals panel decision was filed, and that this rendered the petition untimely. *Compare* Tex. Lab. Code Ann. § 410.252(a) (West Supp. 2005) ("A party may seek judicial review by filing suit not later than the 40th day after the date on which the decision of the appeals panel was filed with the division."), *with id*. § 410.255 (West 1996) ("judicial review shall be conducted in the manner provided for judicial review of a contested case under [the APA]"), *and* Tex. Gov't Code Ann. § 2001.176(a) ("A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date on which the decision that is the subject of complaint is final and appealable."). Besides maintaining that its suit was properly governed by modified *de novo* review, NAIC responds that, even if not, section 410.252(a)'s forty-day deadline would still govern and that, in any event, it satisfied even the thirty-day deadline.

All of these contentions are resolved by our disposition of the issues above.

'coverage,' not compensability." *Id*. at 488. On this basis, the court concluded that "[j]urisdiction is proper in Travis County" under section 410.255 and the APA. *Id*.[4]

NAIC disputes TPCIGA's views concerning both the appropriate judicial review path and whether taking the wrong path would have deprived the district court of subject-matter jurisdiction. NAIC urges that where, as here, it is undisputed that an injured worker is an employee of *some* employer who indisputably has coverage, the determination of *which* employer is an aspect of the compensability inquiry, and thus governed by modified *de novo* review. Alternatively, NAIC contends that the Travis County District Court had subject-matter jurisdiction over its suit and that TPCIGA's complaint implicated, at most, the appropriate standard of review. As for the fact that it initially filed its suit in McLennan County district court rather than Travis County, NAIC broadly construes our decision in *Hartford Underwriters Ins. Co. v. Hafley*, 96 S.W.3d 449 (Tex. App.—Austin 2002, no pet.) (construing venue requirement of labor code section 410.252(b), in light of *Dubai Petroleum Co.*, to be mandatory but not jurisdictional), to extend to judicial review suits governed by section 410.255 and the APA that are improperly filed outside Travis County.

We consider first the validity of TPCIGA's assertion that NAIC's suit is one concerning "coverage" rather than compensability.

### *Compensability or "coverage"*

Our disposition of this issue turns on our construction of labor code sections 410.301 and 410.255. Statutory construction presents a question of law that we review *de novo*. *Johnson v.*

---

[4] *Morales* was decided after the district court's judgment in this case, which may explain TPCIGA's timing in raising its jurisdictional arguments.

10

*City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). We construe statutory provisions in order to ascertain and effectuate legislative intent. *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). In ascertaining legislative intent, we may consider the evil sought to be remedied, the legislative history, and the consequences of a particular construction. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998). Further, we read every word, phrase, and expression in a statute as if it were deliberately chosen and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). In the Workers' Compensation Act, this is not only a presumption: the legislature carefully balanced the competing interests of injured employees, employers, and insurance carriers in an attempt to create a viable compensation system, all within constitutional limitations. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 521 (Tex. 1995).

Section 410.301 provides that suits "regarding compensability or eligibility for or the amount of income or death benefits" are governed by modified *de novo* review. Tex. Lab. Code Ann. § 401.301. Substantial-evidence review is reserved as the default for any other type of reviewable appeals panel decision. *See id*. § 410.255. TPCIGA (1) urges that NAIC's suit concerns "coverage" and (2) implies that a "coverage" issue is exclusive of a "compensability" issue.

The Act does not define "compensability" but does define "compensable injury" as "an injury that arises out of and in the course and scope of employment for which compensation is payable under [the Act]." *Id*. § 401.011(10) (West Supp. 2005). The first component of determining a compensable injury, whether an injury is one "for which compensation is payable under the act,"

11

is determined by the Act's provisions governing awards of income benefits,[5] medical benefits,[6] death benefits,[7] and burial benefits.[8] The second component, the "course and scope of employment" within which an injury must arise to be compensable, is defined as "an activity . . . that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *Id*. § 401.011(12).

"Coverage" in workers' compensation law commonly refers to the threshold issue of whether an individual or entity who hires workers is an "employer" subject to the Act. *See id*. § 401.011(18) (defining "employer" generally as "a person who makes a contract of hire, employs one or more employees, *and has workers' compensation insurance coverage*.") (emphasis added); *In re Texas Mutual Ins. Co.*, 157 S.W.3d 75, 79-81 (Tex. App.—Austin 2004, orig. proceeding). We have recognized that a threshold coverage dispute may be within the exclusive jurisdiction of the workers' compensation commission if it arises in a claim for compensation benefits, but ordinarily not if presented by a claim predicated upon the absence of coverage. *Id*. at 80-82 (applying *American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803 (Tex. 2001)). We have not yet addressed how a final agency decision in these types of threshold coverage disputes should be reviewed by the courts.

---

[5] *See generally* Tex. Lab. Code Ann. §§ 408.101 (West 1996) (temporary income benefits), .121 (impairment income benefits), .142 (West Supp. 2005) (supplemental income benefits), .161 (West Supp. 2005) (lifetime income benefits).

[6] *See id*. § 408.021 (West 1996).

[7] *See id*. § 408.181 (West Supp. 2005).

[8] *See id*. § 408.186.

Compensability and coverage issues are ultimately related to some degree: a "compensable injury" under the Act presupposes that a worker's employer has coverage, and an injury must be compensable in order to fall within that coverage.[9] The Act does not specifically address judicial review of coverage issues. Rather, it provides only that appeals panel decisions "regarding compensability or eligibility for or the amount of income or death benefits" are subject to modified *de novo* review, relegating to substantial-evidence review any other types of reviewable appeals panel that are *not* "regarding compensability or eligibility for or the amount of income or death benefits." *See* Tex. Lab. Code Ann. §§ 410.255 & 410.301(a). For these reasons, our controlling inquiry is whether NAIC's claim is one "regarding compensability or eligibility for or the amount of income or death benefits" under section 410.301, not whether that claim can alternatively or additionally be characterized as one involving "coverage."

While not squarely addressing the issue before us, the Texas Supreme Court's analysis in *Garcia* is instructive regarding our construction of section 410.301. Rejecting open courts and jury trial challenges to the then-new Workers' Compensation Act, the supreme court emphasized that the Act provided a right to jury trial for "the principal compensation issues: compensability of the injury; eligibility for income and benefits; and, within limits, the amount of those benefits." 893 S.W.2d at 528. To illustrate "issues regarding compensability," the court cited "whether [an injury] occurred in the course and scope of employment." *Id*. at 515. The *Garcia* court

---

[9] A "compensable injury," again, is an injury (1) "for which compensation is payable" under the Act and that (2) arises "out of and in the course and scope of employment." *Id*. §§ 401.011(10). Both elements require that the employer have workers' compensation coverage. *See id*. § 401.011(18) ("employer" under the Act is "a person who makes a contract for hire, employs one or more employees, and has workers' compensation insurance coverage").

13

contrasted these "principal compensation issues" with what it termed the "collateral issues" the Act made subject to substantial-evidence review. *Id*. at 529-30. Examples of such collateral issues, the court posited, "[p]resumably . . . might include such matters as disputes over medical benefits, attorneys' fees, and administrative sanctions." *Id*. at 530 n.27.

Following *Garcia*, there seems to be little dispute that issues concerning whether an injury occurred within the scope of employment "regard[] compensability" and are thus subject to modified *de novo* review. *See ESIS, Inc. v. Johnson*, 908 S.W.2d 554, 558-60 (Tex. App.—Fort Worth 1995, writ denied) (applying, without objection, modified *de novo* review to dispute concerning whether jailer's accidental self-inflicted gunshot wound occurred within scope of employment with county; also citing *Garcia* for proposition that "[u]nder this modified de novo review, all issues regarding compensability (such as whether it occurred within the course and scope of employment) may be tried to a jury."). The supreme court has also held that disputes regarding various other subsidiary issues bearing upon "compensability or eligibility for or the amount of income or death benefits" fall within section 410.301. In *Rodriguez*, for example, the court held that disputes concerning the finality of an impairment rating fell within the provision because their resolution ultimately impacted the claimant's eligibility or amount of income benefits. *Rodriguez*, 997 S.W.2d at 253-55;[10] *see also Beaumont Indep. Sch. Dist. v. Parkerson*, 105 S.W.3d 761, 762-63

---

[10] The supreme court reasoned:

> Any dispute that challenges an impairment rating's finality necessarily implicates the date of maximum medical improvement and the amount paid as temporary income benefits. This dispute may also impact the employee's eligibility for, and the calculation of, impairment income benefits and supplemental income benefits. Disputes about an injured employee's

14

(Tex. App.—Beaumont 2003, no pet.) (dispute regarding date of injury impacted eligibility for benefits, and thus was governed by section 410.301); *Hernandez v. Texas Workers' Comp. Ins. Fund*, 946 S.W.2d 904, 906 (Tex. App.—Eastland 1997, no writ) (dispute implicating incapacity rating and maximum medical improvement rating "deal with the issue of the amount of benefits" and are governed by modified *de novo* review; thus, suit for judicial review was properly brought in injured worker's county or residence rather than Travis County).[11]

However, as TPCIGA emphasizes, several of our sister courts have identified "coverage" issues that they have distinguished from compensability issues. *See Houston Gen. Ins. Co. v. Associated Cas. Ins. Co.*, 977 S.W.2d 634, 636 (Tex. App.—Tyler 1998, no pet.). *Houston General* involved a dispute between two compensation carriers for a single employer, Mallory Propane. *Id*. at 635. Beginning on April 1, 1991, Houston General provided compensation coverage to Mallory. *Id*. Mallory later obtained coverage with another carrier, Association Casualty Insurance Company, replacing its Houston General policy effective August 1, 1991. *Id*. It was undisputed that on that same day, an employee, Featherston, was injured, and that American General had coverage

---

impairment rating are, therefore, disputes about benefits. Because the modified de novo standard of review applies to these types of benefit disputes, that standard also applies to impairment rating disputes, including disputes that challenge an impairment rating's finality.

*Id*. at 254.

[11] Conversely, broader disputes turning on a component compensability question have been held to fall within section 410.301. *See American Casualty Co. v. Martin*, 97 S.W.3d 679, 686-87 (Tex. App.—Dallas 2003, no pet.) (employer's claim against carrier for reimbursement of benefits paid was governed by section 410.301 rather than 410.255 because "threshold standard for the right to reimbursement is the existence of a compensable injury, and the amount of reimbursement is equal to the amount of benefits paid to the employee to which he was entitled.").

15

at that time. *Id*. However, after Featherston was injured, Mallory incorrectly notified Houston General that it was still the compensation carrier. *Id*. Houston General proceeded to pay benefits, and continued to do so even after the department of insurance notified it, in 1993, that Featherston's injury had not occurred within that company's coverage period. *Id*. Houston General later disputed its liability on grounds that Association Casualty had coverage at the time of injury. *Id*. at 636. Association Casualty successfully sought summary judgment on grounds that Houston General had waived its right to dispute liability by failing to contest compensability within 60 days. *Id*.; *see* Tex. Lab. Code Ann. § 409.021. Of relevance here, Houston General argued on appeal that the critical issue was not "compensability" for the injury but "coverage" of the claim, and that it had not waived its right to contest coverage. *Houston Gen.*, 977 S.W.2d at 636. The Tyler court agreed, reasoning as follows:

> [T]here is no dispute that at least one of the two workers' compensation policies was in force and that Featherston's injury arose out of and in the course and scope of her employment with Mallory. Featherston's injury was compensated. The issue here is not one of "compensability;" rather we must decide which of the two carriers had covered Featherston's injury. We decline to hold that the question presented here was one of "compensability" as that term is used in § 409.021(c).

*Id*.

On the other hand, the Fourteenth Court of Appeals, applying section 409.021 to facts closer to the present case, later held that a carrier had waived its right to dispute its liability by waiting more than sixty days to contest compensability. *Insurance Co. of State of Pa. v. Hartford Underwriters Ins. Co.*, 164 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An employee, Serpas, worked for a temporary staffing agency, Tandem Staffing, who assigned Serpas

16

to work at Igloo Products Corporation. *Id*. at 748. Serpas was injured in 1999, and Hartford, Tandem's compensation carrier, paid benefits. *Id*. In 2000, Serpas sued Igloo, which ultimately obtained summary judgment on the basis that Serpas's exclusive remedy was through the workers' compensation system. *Id*. Events in this proceeding evidently prompted Hartford to file—over three years after Serpas' injury—a notice of disputed claim with the Commission claiming "newly discovered evidence" that Igloo was Serpas's employer under the borrowed servant doctrine. *Id*.; *see* Tex. Lab. Code Ann. § 409.021(d). The appeals panel ruled that Hartford was liable for benefits because it had failed to timely contest compensability. *Hartford*, 164 S.W.3d at 748. The district court reversed, and the court of appeals affirmed. *Id*. at 748, 750. The court of appeals distinguished *Houston General* on the basis that the "dispute [there] was which of the two carriers provided insurance coverage on the day the injury to the worker occurred. Here, it is undisputed that both [carriers] provided coverage to their respective insureds on the day of Serpas' injury; *the initial dispute was which of the insureds was the employer*, not which carrier provided insurance coverage." *Id*. at 749 n.1 (emphasis added). Having found that the question of which company was the employer of the injured worker is a question of compensability, the Fourteenth Court then found that the insurer had waived the its right to contest a determination of which company was the employer. *Id*. at 749-50; *see also* 28 Tex. Admin. Code § 124.3 (2004).[12]

---

[12] Rule 124.3, implementing labor code section 409.021, explicitly requires that carriers must contest compensability within sixty days "[i]f the carrier wants to deny compensability of *or liability for the injury*." 28 Tex. Admin. Code § 124.3(a)(3) (2004) (emphasis added). Neither party suggests that Rule 124.3 has any bearing on our analysis of labor code section 410.301, however.

Another decision involving a liability dispute between two carriers in which the court distinguished between compensability or coverage issues is *Security Nat'l Ins. Co. v. Farmer*, 89 S.W.3d 197 (Tex. App.—Fort Worth 2002, pet. denied). An employee, Farmer, had incurred a lower back injury while on the job in 1995. *Id*. at 199. At the time, Security National Insurance Company was the workers' compensation carrier for Farmer's employer. *Id*. An MRI revealed that Farmer had small disc herniations at two locations in Farmer's back. *Id*. Security National did not dispute that Farmer's injury was compensable and began paying benefits. *Id*. Farmer reached maximum medical improvement in March 1995 and returned to work. *Id*. He did not seek any further medical treatment thereafter until December 1997, when he experienced back pain that he could not relate to a specific incident. *Id*. Farmer experienced a second on-the-job back injury in April 1998. *Id*. An MRI revealed a third disc herniation at a different location, that the previous two disc herniations appeared larger than they had in 1995, and bone spurs indicative of degenerative disc disease. *Id*. By that time, Farmer's compensation carrier was Hartford Insurance Company. *Id*. Hartford initially disputed compensability for Farmer's injury but ultimately conceded that Farmer had incurred a new injury to the third disc in April 1998 and accepted liability for treating it. *Id*. But Hartford continued to dispute that Farmer's other conditions—the worsening previous two disc herniations and possible degenerative disc disease—were attributable to the April 1998 injury. *Id*. at 199-200. Security National responded that Farmer's condition after April 1998 was caused solely by his April 1998 injury or degenerative disc disease, not his 1995 injury. *Id*. at 200. An appeals panel ruled against Security National, finding that Farmer's 1995 injury was a producing cause of his first two disc herniations and that his April 1998 injury did not extend to those herniations. *Id*. Security National

18

filed suit for judicial review in the district court of Tarrant County. *Id*. Over Security National's

objection, the district court applied the substantial-evidence standard of review rather than modified

*de novo*. *Id*. Security National appealed, complaining that the district court had erred in applying

the wrong standard of review.[13] *Id*. The Fort Worth Court of Appeals agreed, and reversed and

remanded. *Id*. at 203-04.

Analyzing the text of section 410.301, the court held that "an appeals panel decision

'regarding compensability' is one concerning payment of a benefit allowed under the Act for an

injury that arises out of and in the course and scope of employment" and that "a decision 'regarding

eligibility for benefits' is one concerning entitlement for benefits." *Id*. at 201. It then held that the

two issues presented by Security National—whether Farmer's compensable January 1995 injury was

a producing cause of his post-April 1998 herniations of the previously injured discs, and whether

Farmer's compensable April 1998 injury extended to include herniations of those previously injured

discs—fell within these definitions. *Id*. at 202. The court rejected Hartford's argument that

compensability for those injuries was not at issue and that the sole issue was whether an insurer

should pay for an injury that all parties agreed was compensable:

> These issues concern both whether Farmer was entitled to benefits under the Act and
> the payment of benefits allowed under the Act for an injury that occurred in the
> course and scope of his employment. If the L4-5 and L5-S1 disc herniations after
> April 2, 1998 were caused by either the January 1995 or the April 1998 on-the-job
> injury, or both, Farmer would be entitled to workers' compensation benefits, and one

---

[13] We observe that the Fort Worth court did not characterize this issue as one of subject-matter jurisdiction, and did not indicate that either party questioned the Tarrant County district court's subject-matter jurisdiction over a dispute the court had determined was governed by section 410.255.

19

or both carriers would be responsible for paying them. If the herniations were not caused by an on-the-job injury, but by degenerative disc disease, Farmer would not be entitled to benefits.

*Id*. at 201-02.

As these decisions reveal, Texas courts have struggled with what is at best an elusive distinction between issues of compensability versus "coverage." Applying the rationale of these cases,[14] we hold that NAIC's claim regards compensability and, thus, is governed by modified *de novo* review.

From the decisions we have reviewed, we can ascertain the following principles. A workers' compensation dispute is one "relating to compensability, eligibility, or amount of income or death benefits" if it presents those precise issues or certain issues that bear upon those ultimate determinations. *See Rodriguez*, 997 S.W.2d at 253-55; *Parkerson*, 105 S.W.3d at 762-63; *Hernandez*, 946 S.W.2d at 906. Disputes concerning whether an employee was injured while within the course and scope of an employment relationship regard compensability. *See Garcia*, 893 S.W.2d at 515; 28; *ESIS,* 908 S.W.2d at 557-58. We believe, as the Fourteenth Court suggested, that this principle would logically extend to disputes in which it is uncontested that two carriers provided coverage to their respective insureds on the date of injury, and the dispute centers on "which of the insureds was the employer, not which carrier provided insurance coverage." *Hartford*, 164 S.W.3d at 749 n.1. But our sister courts have determined that a dispute may fall outside "compensability, eligibility or amount or income or death benefits" where it is undisputed that the injured worker was

---

[14] We express no opinion regarding whether the statutory definitions and *Garcia* might suggest a broader view of compensability issues.

acting within the scope of employment for a particular employer and the parties differ as to whether that employer has coverage or the identity of the carrier with whom the employer has coverage. *Houston Gen.*, 977 S.W.2d at 635-37; *see also Security Nat'l*, 89 S.W.3d at 201-02 (distinguishing between issues of "whether Farmer was entitled to benefits under the Act and the payment of benefits allowed under the Act for an injury that occurred in the course and scope of his employment."). The *Morales* court appeared to extend this concept by holding that the dispute is a coverage dispute, and not one of "compensability, eligibility or amount or income or death benefits," when it encompasses scope and identity of employer issues *and* when at least one of the potential employers is a nonsubscriber. *Morales*, 169 S.W.3d at 488.

As demonstrated by the appeals panel decision here,[15] the dispute at the heart of NAIC's suit for judicial review concerned whether Gregory or Hunter was the employer of Beck and Brown. Specifically, the appeals panel considered the terms of the contract between Hunter and Gregory and the circumstances of the job performed by Beck and Brown. Relying on the borrowed-servant doctrine, *see Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977), the appeals panel reviewed the evidence considered by the hearing officer and affirmed the conclusion that Beck and Brown were employed by Gregory. This type of dispute is closely akin to the questions of employer identity and scope of employment that Texas courts have classified as compensability issues.

_____

[15] *Cf. Morales v. Liberty Mut. Ins. Co.*, 169 S.W.3d 485, 488 (Tex. App.—El Paso 2005, pet. filed) (emphasizing that appeals panel had characterized dispute as concerning coverage, not compensability).

There is no threshold coverage question here—there is no contention, for example, that the two workers were independent contractors or were acting in the course and scope of employment with a nonsubscriber. Instead, each carrier's liability turns solely on a component of the compensability inquiry—were Beck and Brown injured in the course and scope of employment with that carrier's indisputably covered insured, or within the course and scope of employment with the other carrier's insured? If the workers were in the course and scope of employment with TPCIGA's insured (as the jury found), then their injuries are compensable by TPCIGA; if the jury had instead found that the workers were in the course and scope of employment with NAIC's insured, their injuries would be compensable by that carrier. We will follow the lead of the supreme court in *Garcia* and hold that because this dispute turns on whether injured workers were acting within the scope of employment of a covered employer, it is one "regarding the compensability or eligibility for or the amount of . . . benefits."

Our holding is further supported by the significance of the legislature's provision for APA substantial-evidence review, in Travis County district court, for appealable decisions not "regarding compensability of eligibility for or amount of income or death benefits." *See* Tex. Lab. Code Ann. § 410.255. The legislature has customarily reserved this type of deferential but specialized review for administrative decisions within an agency's delegated area of expertise. *Railroad Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995); *Reliant Energy, Inc. v. Public Util. Comm'n of Tex.*, 153 S.W.3d 174, 184 (Tex. App.—Austin 2004, no pet.); *see also Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd.*, 156 S.W.3d 91, 98-99 (Tex. App.—Austin 2004, pet. denied). Questions regarding the existence, course and scope of employment relationships, by contrast, have long been addressed by Texas courts and lay juries. *See*

22

*GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999); *Garcia*, 893 S.W.2d at 515; *see also Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.). We presume that the legislature was aware of this background law when enacting the Act and would have considered it when distinguishing between issues "regarding compensability or eligibility for or the amount of income or death benefits" and those subject to APA substantial-evidence review. *See* Tex. Gov't Code Ann. § 311.023 (West 2005); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530-31 (Tex. 2002); *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.").

We further observe that in *Garcia*, the supreme court cautioned that section 410.255 "may encompass issues for which the right to jury trial must be preserved." 893 S.W.2d at 530. We must be mindful of these potential constitutional implications when construing sections 410.301 and 410.255. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002); *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996); *see also* Tex. Gov't Code Ann. § 311.021(1) (West 2005) (courts should construe statutes when possible to avoid constitutional infirmities).

We conclude that NAIC's suit is one "regarding compensability" governed by modified *de novo* review under section 410.301.[16] For these reasons, we need not reach whether the adjudication of NAIC's appeal under the modified *de novo* review process, if erroneous, would have

---

[16] We intend no comment regarding whether or how any distinction between compensability issues under section 410.301 and "coverage" issues should be applied to facts other than those here.

23

deprived the district court of subject-matter jurisdiction.[17]  We overrule TPCIGA's first issue.

---

[17] We observe, however, that *if* NAIC's suit had belonged on the substantial-evidence track, and that *if* following the wrong track would deprive the district court of subject-matter jurisdiction, this case would have implicated many of the concerns with finality of judgments that underlie *Dubai* and its progeny.  *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000).  In *Dubai*, the supreme court reversed the longstanding doctrine that requirements of a statutory cause of action, created in derogation of the common law, are jurisdictional.  To justify its departure from that established doctrine, the court reasoned:

> [W]hile conceptualizing subject-matter jurisdiction in this way has an initial appeal, the resulting practical difficulties suggest underlying logical flaws. Because of the longstanding principle that subject-matter jurisdiction is a power that "exists by operation of law only, and cannot be conferred upon any court by consent or waiver," *Federal Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943), a judgment will never be considered final if the court lacked subject-matter jurisdiction. "The classification of a matter as one of [subject-matter] jurisdiction . . . opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment." Restatement (Second) of Judgments § 12 cmt. b, at 118 (1982). When, as here, it is difficult to tell whether or not the parties have satisfied the requisites of a particular statute, it seems perverse to treat a judgment as perpetually void merely because the court or the parties made a good-faith mistake in interpreting the law.

*Dubai*, 12 S.W.3d at 76.  This case presented a potential paradigm illustration of these concerns. The parties, in apparent agreement, adjudicated NAIC's suit as if it concerned compensability and was governed by modified *de novo* review.  The distinction in current Texas law between matters impacting compensability governed by modified *de novo* review and other issues governed by substantial-evidence review is often elusive, as demonstrated above.  Yet if the parties had guessed wrong, an unsuccessful party, like TPCIGA, could have attacked the judgment at any point on appeal—or even collaterally.

The legislature may well have intended such jurisdictional limitations, *see Sierra Club v. Texas Natural Res. Conservation Comm'n*, 26 S.W.3d 684, 687-88 (Tex. App.—Austin 2000) (contrasting APA's limitations on district court's subject-matter jurisdiction from types of procedural limitations at issue in *Dubai*), *aff'd on other grounds by*, 70 S.W.3d 809 (Tex. 2002), but they create complications of judicial administration that the legislature perhaps did not foresee.  To avoid the risk of jurisdictional defects and lack of finality, parties will, out of an abundance of caution, file parallel proceedings in both Travis County district court and the county of the injured workers' residence, creating both multiplicity of litigation and the risk of inconsistent adjudications.  *Cf.*

**Beck's participation at trial**

In its second issue, TPCIGA argues that Beck lacked standing to participate in proceedings in the district court because he failed to exhaust his administrative remedies and because he had no justiciable interest in the outcome of the trial. *See* Tex. Lab. Code Ann. § 410.251; *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d at 445-46.

Our review of the record indicates the following: NAIC originally filed suit with Beck as a named defendant because Beck had asserted before the Commission that Gregory had been his employer. At the beginning of trial, Beck announced he would participate as a plaintiff alongside NAIC; Beck conducted a portion of *voir dire*; and during opening statements, Beck informed the jury of his position that Hunter Trucking was his employer. Furthermore, Beck questioned witnesses and made closing argument. After trial, but before the court entered its judgment, Beck filed a motion to formally realign the parties, requesting that he be designated a plaintiff in the case. TPCIGA did not object to the manner in which Beck participated at trial until it opposed Beck's post-trial motion to realign.

The district court indisputably had jurisdiction over the dispute, and Beck was properly a party. The Act required NAIC to join Beck as a defendant. *See* Tex. Lab. Code Ann. § 410.253(a)(2) (West Supp. 2005). TPCIGA's complaint, in substance, is not that Beck lacked

---

*American Cas.*, 97 S.W.3d at 686-87 ("If we were to read the Act to require judicial review of compensability and eligibility decisions in one court, and judicial review of the reimbursement decisions that are tied to those decisions in another court, employees and employers would face the risk of inconsistent and incompatible results."). These problems could be avoided by such legislative measures as clarifying that the court in which a judicial review suit is filed possesses subject-matter jurisdiction to transfer the suit to the proper court or to adjudicate the suit, even under an incorrect review method, if no party timely objects.

standing or was not a proper party but that the district court erred in the manner in which it allowed Beck to participate at trial. We hold that TPCIGA waived this complaint by failing to timely object to Beck's participation at trial as a plaintiff and that, against this backdrop, the district court did not abuse its discretion in granting Beck's post-verdict motion to realign. We overrule TPCIGA's second issue.

**Sufficiency of the evidence supporting employer finding**

In its third issue, TPCIGA challenges the legal and factual sufficiency of the evidence supporting the jury's finding that Hunter was the employer of Beck and Brown at the time of injury. TPCIGA relies on the borrowed-servant doctrine and the terms of the lease agreement, contending that the evidence establishes that Gregory had the right to control Beck and Brown when they were injured.

### *Standards of review*

We will sustain a legal sufficiency point if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (citing Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)). The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See id.* at 827.

26

When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). But more than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We review the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller*, 168 S.W.3d at 807. Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. When there is conflicting evidence, it is the province of the jury to resolve such conflicts. *Id*. at 820. If conflicting inferences can be drawn from the evidence, we assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences. *Id*. at 821. But if the evidence allows only one inference, we may not disregard it. *See id*. So long as the evidence falls within a zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *See id*. at 822.

When reviewing a challenge to the factual sufficiency of the evidence, we must consider, weigh, and examine all of the evidence in the record. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). If a party is attacking the factual sufficiency of an adverse finding on an issue to which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Westech Eng'g, Inc. v. Clearwater*

27

*Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). We should set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not reverse merely because we conclude that the evidence preponderates toward a different answer. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

Under the Act, an "employee" is a "person in the service of another under a contract of hire, whether express or implied, or oral or written." Tex. Lab. Code Ann. § 401.012(a) (West Supp. 2005). The meaning of the word "employee" is the same as in the context of a common-law liability claim. *Gulf States Underwriters of La., Inc. v. Wilson*, 753 S.W.2d 422, 426 (Tex. App.—Beaumont 1988, writ denied); *Northwestern Nat'l Life Ins. Co. v. Black*, 383 S.W.2d 806, 810 (Tex. Civ. App.—Texarkana 1964, writ ref'd n.r.e.). Texas courts have long recognized that a general employee of one employer may become the borrowed servant of another. *Sparger*, 547 S.W.2d at 583; *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327, 330 (Tex. 1968). This doctrine protects the employer who had the right of control from common-law liability when the employer has workers' compensation insurance. *Associated Indem. Co. v. Hartford Accident & Indem. Co.*, 524 S.W.2d 373, 376 (Tex. Civ. App.—Dallas 1975, no writ).

Whether a general employee of one employer may, in a particular situation, become the borrowed servant of another employer is often a difficult question. *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex. 1963). The central inquiry becomes which employer had the right to control the details and manner in which the employee performed the necessary services.

28

*Carr v. Carroll Co.*, 646 S.W.2d 561, 563 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). As the supreme court has explained:

> If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employers in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence.

*Producers Chem. Co.*, 366 S.W.2d at 225. "When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the question is relatively simple." *Id*. at 226. However, when the right-to-control agreement between the employers is only implied or the contract contains no provision for right of control, the problem becomes more difficult. *Id*. In such cases right of control is inferred from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, and the right to substitute another operator of the machine. *Id*. Where the right of control prescribed or retained over an employee is a controverted issue, it is a proper function for the fact-finder to consider what the contract contemplated or whether it was even enforced. *Humble Oil & Refining Co. v. Martin*, 222 S.W.2d 995, 997-98 (Tex. 1949); *Halliburton v. Texas Indemnity Ins. Co.*, 213 S.W.2d 677, 679 (Tex. 1948).[18]

---

[18] We recognize that the supreme court has recently reconsidered the principle in the context of workers' compensation law that an employee can only have one employer. *See generally Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134 (Tex. 2003). At that time, the supreme court limited

We therefore begin with the language of the contract between Hunter and Gregory, which we reviewed extensively above. We look to the agreement to ascertain and give effect to the parties' intentions as expressed in the document. *Lopez v. Munoz, Hockema, & Reed, L.L.P*, 22 S.W.3d 857, 861 (Tex. 2000). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). If a contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and it can be construed as a matter of law. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001).

TPCIGA relies on language in the contract providing that Gregory leased "possession, control, and use" of Hunter's equipment" and was responsible for its operation to support the interpretation that Gregory was the employer. Considered as a whole, however, the contract demonstrates the opposite view. Under the terms of the contract, Hunter provided all fuel, meals, and lodging for the drivers and was responsible for maintenance to the equipment. In addition, the parties explicitly defined the nature of their relationship as that of an independent contractor, with the clear provision that Hunter provide workers' compensation insurance and that "any drivers or employees of [Hunter] are the complete responsibility of [Hunter]." The contract further provided

its holding to the issue of "whether there may be two employers for workers' compensation purposes when a provider of temporary workers furnishes a worker to a client that controlled the details of the work at the time the worker was injured and there was no agreement between the provider of temporary workers and the client regarding workers' compensation coverage." *Id*. at 144. Therefore, we rely on the traditional right-of-control test in this case.

that Hunter, and not Gregory, would conduct much of the operation of the trucks under the terms of the contract—Hunter would inspect the condition of freight both at loading and unloading; at the beginning of the lease term, Gregory would provide Hunter with straps and traps to protect the freight, but liability for loss, theft, or other damage would remain with Hunter; and Hunter was responsible for documenting delivery and accounting for deductions and damage.

The evidence is also sufficient to enable the jury to find that the parties conducted their relationship consistent with the contract. There is evidence that Beck had been hired by Hunter, that Hunter set his wages, issued his paycheck, and withheld taxes and social security. Hunter also purchased workers' compensation insurance for Beck. Hunter owned the tractor that Beck drove and instructed him on work procedures. Gregory required Beck to keep a log book according to Department of Transportation regulations, assigned freight deliveries, and to fill out a driver information form.[19] We find the evidence in the record consistent with the terms of the contract and therefore legally and factually sufficient to support the jury's verdict that Hunter was the employer in this case. We overrule TPCIGA's third issue.

**Evidentiary issues**

In its fourth issue, TPCIGA argues that the district court abused its discretion in refusing to admit into evidence the appeals panel's decision in this case, both in its complete and

---

[19] On cross-examination, NAIC questioned Linda Gregory, a trucking dispatcher for Gregory, concerning Beck and Brown's employment status. NAIC asked if Beck filled out a "job application" with Gregory. Linda Gregory responded, "Yes, but that was just a form we used to have the information, but they weren't actually hired by [Gregory]."

Linda Gregory also testified that Gregory had concerns about Brown's driving ability and requested that Beck and Brown drive as a team.

redacted forms. In its fifth issue, TPCIGA argues that the district court abused its discretion in excluding from the record a letter from Linda Gregory, the trucking dispatcher for Gregory, to Beck alleging violations of log book protocol.

A district court abuses its discretion when it rules on the admissibility of evidence in an arbitrary or unreasonable manner or without reference to guiding legal principles or rules. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 649-50 (Tex. App.—Austin 2005, pet. denied). We must uphold a district court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

We have already decided that this case was governed by modified *de novo* review. Under modified *de novo* review, all issues regarding compensability of the injury (such as whether it occurred in the course and scope of employment) may be tried by jury. *Garcia*, 893 S.W.2d at 528; *see* Tex. Lab. Code Ann. §§ 410.301, .304. The party appealing the Commission's ruling bears the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303 (West 1996).

Concerning TPCIGA's fourth issue, the Workers' Compensation Act contains two provisions governing the admissibility of the Commission's decision and record in a jury trial. First, the trial court is required to "inform" the jury of the Commission appeals panel "decision" in the court's charge. *Id*. § 410.304.[20] This provision is mandatory. The jury, however, is not required to accord the decision any special weight. *Garcia*, 893 S.W.2d at 528. In addition, section 410.306(b)

---

[20] In a bench trial, the court shall consider "the decision of the commission appeals panel" in rendering its judgment. Tex. Lab. Code Ann. § 410.304(b) (West Supp. 2005).

allows the admission into evidence of the Commission's "record." Tex. Lab. Code Ann. § 410.306(b) (West 2006). The Commission's record is comprised, in part, of the written opinion containing the commission appeals panel decision. *ESIS, Inc.*, 908 S.W.2d at 560. However, the Texas Rules of Evidence govern the admission at trial of facts and evidence contained in the Commission record. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 529 (Tex. 2000).

At trial, NAIC objected to the admission of the appeals panel's decision on two grounds. First, NAIC argued that the decision contained inadmissable hearsay because the panel reviewed in its decision the evidence presented to it, including testimony concerning the employer-employee relationship. *See* Tex. R. Evid. 802, 803(8). Second, it asserted that the decision would unnecessarily confuse the jury and that the resulting prejudice would substantially outweigh its probative value. *See* Tex. R. Evid. 403.

The appeals panel decision in this case is a four-page document in which the panel reviewed testimony about the employment conditions of Beck and Brown and the lease agreement concerning the truck. The panel extensively analyzed the governing legal principles and affirmed the hearing officer's conclusion that Gregory was Beck's and Brown's employer. Given that the jury was ultimately asked to determine only one issue—if Hunter Trucking was the employer of Beck and Brown and the time of their injuries—we conclude that the district court could have reasonably excluded the appeals panel's decision because it could have confused the jury and the resulting confusion would have substantially outweighed its probative value. *See* Tex. R. Evid. 403. Therefore, we find no reversible error in the district court's decision to exclude the appeals panel's decision. The district court could inform the jury of the appeals panel's conclusion, and thereby comply with labor code section 410.304, without admitting the document into evidence.

33

In the alternative, TPCIGA offered a "redacted" version of the appeals panel's decision, consisting only of pages one and four of the appeals panel's decision. On those pages, TPCIGA used a black marker to black out all text except for the appeals panel's statement of the issue (two lines and, separately, three lines out of twelve on page one) and its legal conclusion (three lines out of twenty-four on page four).

The district court noted two problems with the redacted version of the panel decision. First, it observed that a reader could see the redacted text through the marker lines. Second, it believed that the redactions and deleted pages created "a misleading impression that there must be a lot of good stuff here that we ought to be reading that's being kept out." The district court concluded that the information contained in the redacted document would be cumulative of the information the court was including in the jury instructions on that issue. We cannot conclude that the district court abused its discretion in excluding the redacted document.

Because we have rejected TPCIGA's arguments that the district court abused its discretion in excluding the complete or redacted versions of the appeals panel's decision, we overrule TPCIGA's fourth issue.

We now turn to TPCIGA's fifth issue, concerning the letter from Linda Gregory to Beck alleging violations of log book protocol. In particular, TPCIGA argues that the letter was admissible as a business record. *See* Tex. R. Evid. 803(6).

To preserve error in the exclusion of evidence, a party must (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible,

34

make a record of the precise evidence the party desires admitted. *Ulogo v. Villanueva*, 177 S.W.3d 496, 501-02 (Tex. App.—Houston [1st Dist.] 2005, no pet .); *see* Tex. R. App. P. 33.1(a). The record reveals that the TPCIGA conceded that the letter was hearsay but argued to the district court that it was admissible as a previous testimony of Linda Gregory (even though Linda Gregory was available and actually testified at trial). *See* Tex. R. Evid. 804(b)(1). The district court rejected that assertion. TPCIGA did not argue that the letter was admissible as a business record and cannot raise that argument for the first time on appeal. We overrule TPCIGA's fifth issue.

## CONCLUSION

We have overruled TPCIGA's issues on appeal. We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: March 31, 2006